First Baptist Church in Schenectady v. Sch. & Troy R. R. Co.

Subsequently administration was granted upon the same estate in Massachusetts. The administrator, under authority obtained for that purpose, sold the real estate which Hicks owned in that state at the time of his death. The proceeds were sufficient to pay the debt of Davis, in full. The court held that as the estate was insolvent, the creditor in Massachusetts was not to be paid his whole debt to the prejudice of the creditors in Vermont, but only a *pro rata* dividend. The administrators were directed to ascertain the amount of the assets and debts in both states and to pay the creditors there, *pro rata.* I am satisfied that this is the proper rule to adopt in the present case. The motion for an injunction is therefore granted.

---

RENSSELAER GENERAL TERM, November, 1848. *Harris, Watson, and Parker*, Justices.

THE FIRST BAPTIST CHURCH IN THE CITY OF SCHENEC-
TADY *vs.* THE SCHENECTADY & TROY RAIL-ROAD CO.

An action on the case lies against a rail-road company for a nuisance, in running their cars and engines, ringing bells, blowing off steam, and making other noises in the neighborhood of a church, or meeting house, on the sabbath, and during public worship, which so annoy and molest the congregation worshipping there as greatly to depreciate the value of the house, and render the same unfit for a place of religious worship.

An action for such an injury is properly brought in the name of the church, in its corporate capacity, and need not be brought by the individuals affected thereby.

And it is properly brought against the rail-road company, as a corporation, instead of against its agents, who caused the noises to be made.

An action on the case for either a public or private nuisance will be sustained, by proof of a wrongful act done by the defendant, and actual damage resulting to the plaintiff therefrom. *Per* HARRIS, P. J.

In both cases the action is founded upon the principle recognized in the maxim *sic utere tuo, ut alienum non laedas.* Hence it is, that acts, in themselves lawful, become wrongful in consequence of the time, or place, or manner of performing them. *Per* HARRIS, P. J.

First Baptist Church in Schenectady *v.* Sch. & Troy R. R. Co.

Where a party is disturbed in the lawful enjoyment of his property, by the wrongful act of another, and he sustains a pecuniary injury thereby, an action on the case lies.

As respects *the* proof of injury, which is required, it is enough to show that the plaintiff's property has, by the wrongful act of the defendant, been rendered less valuable for the purposes to which the owner has seen fit to devote it. It need not appear that its value would be equally depreciated for any other object.

A corporation is liable for an injury done by its servants, if, under like circumstances, an individual would be responsible,

THIS was an action on the case for a nuisance, tried at the Schenectady circuit in October, 1844, before PARKER, circuit judge. The declaration stated that the plaintiffs were the owners and lawfully possessed of a lot of land in the city of Schenectady, upon which there had been erected a building, for the purpose of being used as a meeting house or place of religious worship; that the defendants were the owners and possessors of a rail-road, running near and contiguous to the plaintiffs' premises, upon which they were accustomed to run their cars and locomotive engines; that on the 5th of April, 1843, and on divers other days between that time and the time of the commencement of the suit, the defendants wrongfully, improperly and injuriously, by themselves and their agents, on the sabbaths, when the religious society or congregation, accustomed to use the said meeting house, were lawfully assembled therein, and engaged in public and religious worship, by ringing their stationary bell contiguous to the said house of worship, and their bell attached to their locomotive engines, and by the puffing and whistling of said engines, and blowing off steam therefrom, while standing near to said house of worship, and by the rumbling, jarring noise of their cars and steam engines when moved and propelled by steam on their rail-road, and by the unlawful and improper use of their rail-road on the sabbaths, disturbed, annoyed and molested the said religious society or congregation while engaged in worship; by means whereof the value of the said house of worship was greatly depreciated and the same was rendered entirely unfit for, and valueless as a house of religious worship.

The defendants pleaded first, not guilty, and *secondly*, that by an act of the legislature entitled "An act to provide for the construction of a rail-road from Schenectady to Troy," passed May 21, 1836, and another act entitled "An act to amend the charter of the Schenectady and Troy Rail-Road Company," passed February 21, 1839, the defendants were authorized and empowered, by themselves and their servants, on the sabbaths, when the said religious society or congregation in the plaintiffs' declaration mentioned, were lawfully assembled in said meeting house and lawfully engaged in public and religious worship, to ring their stationary bell, &c. &c.—and if the said religious society or congregation was disturbed, annoyed or molested by the ringing, &c. or if the value of the said meeting house of the plaintiffs had been greatly depreciated, or if the same had been rendered valueless or unfit for use as a house of religious worship, the same had necessarily and unavoidably happened in the lawful use of the defendants' rail-road, as they were authorized and empowered to use the same by virtue of the acts of the legislature aforesaid. To the second plea the plaintiffs replied that the defendants without authority and power and the causes by them in their second plea alleged, committed the said several grievances, &c.

Upon the trial the plaintiffs proved substantially the allegations in their declaration. It was admitted that the defendants had constructed their road in pursuance of the acts of the legislature mentioned in their second plea, and that they had done what was necessary to obtain and had obtained title to and possession of the land through which their road was constructed.

The defendants' counsel insisted upon the following points: 1. That no action for a nuisance could be maintained by the plaintiffs in their corporate capacity, against the defendants, for any acts done by them in the ordinary use of their road in pursuance of and by the authority of the legislature. 2. That there was no evidence of any injury to the value of the plaintiffs' property, otherwise than for a place of public worship, and that the disturbance of the congregation could not affect the plaintiffs, as a corporation, but only the individuals assembled.

3. That if any action could be maintained for a nuisance, it must be brought by the individuals affected thereby; and if, as in this case, no damage was sustained but that which the law presumes every citizen to sustain by a common nuisance, then no action would lie. 4. That if such action could be sustained at all, it should have been brought, not against the defendants as a corporation, but against the individuals who caused such noise to be made. The circuit judge decided that upon the evidence the plaintiffs were entitled to recover, and directed the jury to find a verdict for the plaintiffs for nominal damages. The defendants' counsel excepted and the jury rendered a verdict of six cents for the plaintiffs.

*J. K. Porter,* for the plaintiffs.

*J. Pierson,* for the defendants.

*By the Court,* HARRIS, P. J. In the examination of this case I propose first, to inquire whether the facts alleged and proved constitute a cause of action, and then, if an action can be maintained, whether the plaintiffs are the proper parties to sue; and again, whether the defendants are the proper parties to be sued. These questions involve all the points presented upon the argument.

First, then, can an action be maintained for the annoyance of which the plaintiffs complained? Nuisances are of two kinds, public and private. The former are defined to be such inconvenient and troublesome offences as annoy the whole community in general, and not merely some particular person. (4 *Chitty's Black.* 167.) The latter, any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another. (3 *Chitty's Bl.* 216.) It is not easy, in every instance, to determine to which of these classes an alleged nuisance belongs. Indeed, there are some cases where the offence may be regarded as both public and private. Thus, if one obstruct a water-course so that the water flows back upon the land of another, it is a private nuisance for which an action will lie;

and if the overflowing of the land have the effect, as it often does, to render the neighborhood unhealthy, it is also a public nuisance, and of course the subject of criminal as well as civil prosecution. And in general, all nuisances which, when injurious to an individual, are actionable, are, when detrimental to the public, indictable also. So on the other hand, if a person sustain some particular damage, beyond the rest of the community, by a public nuisance, he may maintain his private action for satisfaction, while at the same time the public may prosecute criminally for the offence. The distinction, therefore, between public and private nuisances, so far as it relates to civil remedies, is of but little practical value. In either case the action is sustained by proof of a wrongful act done by the defendant, and actual damages resulting to the plaintiff from such wrongful act. In both cases the action is founded upon that great law of christian morality which requires every man to do to others as he would have others do to him. The same great principle is recognized in the legal maxim *sic utere tuo, ut alienum non laedas.* Hence it is, that acts, in themselves lawful, become wrongful in consequence of the time, or place, or manner of performing them. Thus there are various trades and manufactures, useful and lawful when exercised in remote and proper places, which become nuisances when carried on where they necessarily incommode and annoy others. In accordance with this principle it has been held that the erection and use of a smith's forge, or a lime kiln, or a tobacco mill, or a tannery, or a slaughter house in the vicinity of another's house, whereby it is rendered useless or even uncomfortable for the purposes of habitation, is a wrongful act, for which an action lies. (2 *Starkie's Ev.* 979, *tit.* Nuisance. 3 *Chitty's Black.* 216.)

The doctrine on this subject is well stated by Chancellor Walworth, in the conclusion of his opinion in the court for the correction of errors, in *Lansing* v. *Smith,* (4 *Wend.* 25.) "If" says he, "a person has sustained actual damage by the erection of a nuisance, whether direct or consequential, I am not prepared to say he cannot maintain an action against the wrong-

First Baptist Church in Schenectady *v.* Sch. & Troy R. R. Co.

doer. If he sustains no damage but that which the law presumes every citizen to sustain, because it is a common nuisance, no action will lie. But the opinion I have formed on this point is, that every individual who receives actual damage from a nuisance may maintain a private suit for his own injury, although there may be many others in the same situation. The punishment of the wrongdoer by a criminal prosecution, will not compensate for the individual injury; and a party who has done a criminal act cannot defend himself against a private suit by alleging that he has injured many others in the same way, and that he will be ruined if he is compelled to make compensation to all."

The action for a nuisance is aptly compared, by Mr. Justice Sutherland, in delivering the opinion of the supreme court, in the same case of *Lansing* v. *Smith,* (8 *Cowen,* 146,) to an action of slander for words not actionable in themselves, or an action by a master for the beating of his servant, or by a parent for the debauching of his daughter. The wrongful act of the defendant must be shown, but the gist of the action is the special damage. The important question, upon this branch of the case, then is, whether the pleadings and the evidence bring the case within these well established principles.

The complaint is, in brief, that the defendants by the ringing of their bells, and blowing off steam, and other noises, in the neighborhood of the plaintiffs' meeting house, on the sabbath, and during the period of public worship, so annoyed and molested the congregation worshipping there, as greatly to depreciate the value of the house and render the same entirely unfit for a house of religious worship. The evidence is sufficient to show, that by the disturbances of which the plaintiffs complain, the usefulness of their house, for the purposes to which it had been appropriated, is at least impaired. This is not seriously controverted by the defendants, but they insist that they have done no more than by their charter they were authorized to do, and that therefore, if the plaintiffs have sustained damage by their acts, it is *damnum absque injuria.* If this position is true in point of fact, it is an answer to the action. If the defendants

First Baptist Church in Schenectady *v.* Sch. & Troy R. R. Co.

have only pursued the path prescribed for them by the laws from which they derive their existence, they have committed no wrongful act. Though the plaintiffs may have sustained damage, it is, indeed, *damnum absque injuria ;* for the act of the law, like the act of God, works no wrong to any one. But I find nothing in the statutes which give the defendants existence and prescribe their corporate powers, which can be construed to justify them in creating the nuisances of which the plaintiffs complain. They are indeed authorized to make their rail-road, and to acquire the land necessary for that purpose. They are also authorized to use their road for the transportation of passengers and freight. But in the exercise of this authority they are not to be exempt from liability for injuries to others, to the same extent as if the rail-road had been constructed and used by individuals owning the land, without legislative sanction. If, either in the construction or use of the road, they commit an act for which an individual, under the same circumstances, would be liable, they too must be held answerable for the consequences. Every corporation takes its powers subject to this implied restriction. Any other doctrine would lead to unimaginable mischiefs. Where, as in this country, corporations are so multiplied and so extensively engaged in the various departments of business, to hold that they may, with impunity, do any act for which an individual would be amenable to justice, would result in the most pernicious consequences.

Assuming, then, that corporations, like individuals, are answerable for the damages resulting from the wrongs they do, we come back to the question whether the acts complained of, resulting as they did in the injury alleged by the plaintiff, constitute a sufficient cause of action. And upon this question, upon the principles to which I have referred, I cannot doubt that the plaintiffs are entitled to recover. They were disturbed in the lawful enjoyment of their own property. The defendants, in creating that disturbance, were engaged in unlawful business. The acts of which the plaintiffs complain were clearly within the prohibition of the statute relating to the observance

of the christian sabbath. (2 *R. S.* 675, § 70. *Watts* v. *Van Ness*, 1 *Hill*, 76.) The plaintiffs sustained pecuniary injury as the result of these unlawful acts of the defendants. In these facts I find all the elements necessary to sustain the action. (*Myers* v. *Malcom*, 6 *Hill*, 292. *Fish* v. *Dodge*, 4 *Denio*, 311. *Peirce* v. *Dart*, 7 *Cowen*, 609. *Crittenden* v. *Wilson*, 5 *Id.* 165. *See also Rose* v. *Groves*, 5 *Man. & Granger*, 613.) In the latter case, the plaintiff carried on the business of an innkeeper and victualler in a house which communicated with the river Thames by a passage and steps, where persons frequenting the house were accustomed to land from boats. The defendants were mast and block-makers occupying adjoining premises. The case showed that they had placed timbers and spars in the river, in such a manner that, at high water, the access to the plaintiff's house was obstructed. It was shown that the plaintiff's business had fallen off since the obstruction. The question left to the jury was whether the access to the plaintiff's house had in fact been obstructed by the defendants. The jury having found a verdict for the plaintiff, it was held, upon a motion in arrest of judgment, that whether the act complained of was a public nuisance or not, the case disclosed a private injury to the plaintiff sufficient to constitute a cause of action. A similar case is found in *Wilkes* v. *Hungerford Market Company*, (2 *Bing. N. C.* 281,) where it was held that a bookseller, having a shop by the side of a public thoroughfare, might maintain an action for the loss he had sustained by the defendant's continuing for an unreasonable time an authorized obstruction. *Elliotson* v. *Feetham*, (2 *Bing. N. C.* 134,) was, like that at bar, a case of noisy nuisance. The plaintiff alleged that he was lawfully possessed of a dwelling house, in which he with his family dwelt, and where he exercised and carried on the profession of doctor of medicine and physician, and that the defendant being possessed of a certain manufactory for the working of iron, &c. situate near to his dwelling house, made divers large fires and also divers loud, heavy, jarring, varying, agitating, hammering and battering sounds and noises, whereby the plaintiff and his family were greatly disturbed, &c. and

by means of which his premises were greatly lessened in value, and he had been prevented from exercising and carrying on his profession in so ample and beneficial a manner as he otherwise might and would have done.   Upon demurrer the court directed judgment for the plaintiff.   So, in the case of *The Duke of Northumberland* v. *Clowes,* cited in 3 *Chitty's Blackstone,* 217, *note* 5, the defendant employed a steam engine in his business, as a printer, which produced a continual noise and vibration in the plaintiff's apartment, which adjoined the premises of the defendant, and it was held to be a nuisance.   In *Hight* v. *Thomas,* (10 *Ad. & Ellis,* 590,) an action was sustained for causing offensive smells upon the defendant's premises which came near to, in and about the plaintiff's dwelling house. *Bliss* v. *Hall,* (4 *Bing.* 183,) too, was a case of nuisance for carrying on the trade of a candlemaker on premises adjoining the dwelling of the plaintiff.   The defendant pleaded that he had carried on the business in the same place for three years before the plaintiff became possessed of his messuage.   Upon demurrer Vaughan J. said, " The smells and noises of which the plaintiff complains are not hallowed by prescription."   And Bosanquet, J. said, " The defendant has, prima facie, a right to enjoy his property in a way not injurious to his neighbor ; but here, on his own showing, the business he carries on is offensive, and he makes out no title to persist in the annoyance."   (*See also Rex* v. *Neil,* 2 *Carr. & Payne,* 483.)

The defendants insist that, as the evidence of injury related solely to the use of the plaintiffs' house as a place of public worship, it did not entitle the plaintiffs, as a corporation, to maintain the action.   It is true that the evidence only shows that by reason of the acts complained of, the plaintiffs' house is less valuable for the purposes of a house of public worship.   It does not appear that its value would be equally depreciated for any other object ; nor, indeed, but that it might be devoted to some purpose for which the defendants' noises would not render it less fit.   But this, I apprehend, is not necessary.   So far as proof of injury is required, it is enough to show that the property has been rendered less valuable for the purposes to which the

owner has seen fit to devote it.   As well might the plaintiff in *Fish* v. *Dodge* have been required to show that her boarding house could not be used in some other way, so that the noise and smoke of the defendants would have been less annoying. But in that case it was considered enough that the plaintiff had shown that the defendants had so conducted their business, lawful in itself, that it had proved a great annoyance to the plaintiff.   "It is enough," said Chief Justice Bronson, quoting the language of Lord Mansfield, "that the enjoyment of life and property has been rendered uncomfortable."

The case of *Squier* v. *Gould*, (14 *Wend.* 159,) upon which the defendants' counsel relied, does not, I think, sustain his position.   In that case the action was brought by the owner of a store.   The act complained of was the placing of sand, lime and other building materials, in the highway, so as to interrupt a free passage to the plaintiff's store, and so that the dirt and dust blew into the store and greatly incommoded and injured the plaintiff and damaged his goods and premises.   On the trial the proof was that the store was in fact occupied by a tenant of the plaintiff, and that in consequence of the annoyance complained of, customers were prevented from resorting to the store, and the tenant abandoned it, and that it remained unoccupied.   The suit was brought in a justice's court, where the plaintiff recovered.   It was reversed, on the ground that the evidence of injury sustained by the tenant and the loss of customers by him, was inadmissible.   It is clearly to be inferred from the opinion in that case, that if the plaintiff had declared for the loss of his tenant, and the consequent loss of his rent—or if the tenant had brought his action, and had declared for the injury of his goods and the loss of his customers, either, and perhaps both actions, might have been maintained.   The defendants' counsel contends that it was the individuals who assembled at the plaintiffs' house for worship, and not the corporation owning the house, who were annoyed by the defendants' noise, and therefore that these individuals, and not the corporation, should have been plaintiffs in the action.   To make the case of *Squier* v. *Gould* an authority to sustain this posi-

tion, it should have been held that the customers who would have resorted to the store, but for the nuisance, and not the owner or tenant, should have brought the action.

In *Owen* v. *Henman,* (1 *Watts & Serg.* 548,) an action was conceived upon the principle contended for by the defendants' counsel. In that case the plaintiff alleged that he was a member of the congregation of the Old Presbyterian Church of Wysox, and as such had a right to sit in their house of worship, and to hear divine service, and exercise religious worship therein, and that the defendant, by making a loud noise in talking, singing and reading, unlawfully disturbed him in the hearing of the preaching of a certain clergyman, in so ample and beneficial a manner as he was entitled to do. The opinion of the court was delivered by Justice Sergeant. He says, " the injury alleged is not the ground of an action. The plaintiff claims no right in the building, or any pew in it, which has been invaded. There is no damage to his property, health, reputation or person. He is disturbed in listening to a sermon, by noises. Could an action be brought by every person whose mind or feelings were disturbed in listening to a discourse or any other mental exercise, and it must be the same whether in a church or elsewhere, by the noises voluntary or involuntary of others, the field of litigation would be extended beyond endurance." And in conclusion he says, " the injury complained of, if against the will of the officers of the church, is *in the nature of a nuisance, or injury to them, and it is for them to seek redress.*" " It is well known," he further adds, " that the property of our churches and meeting houses, and the superintendence of the congregations, and the right to control and regulate them, and to prevent improper intrusion or interference, by suit or otherwise, is uniformly vested in some corporation or trustees, in whom is placed the power to enforce the will of the owners. It is for them to bring actions of trespass, or on the case, to regulate the affairs of churches, and to protect the members in the enjoyment of their religious rights and property."

And I think it equally clear, that the action is properly brought against the defendants. It was, indeed, once supposed,

that an action for a tort would not lie against a corporation. The argument by which this doctrine was maintained was plausible, though specious: A corporation, it was said, cannot be invested with authority to commit a tort. It acts only through individuals, as agents, and when those who act for the corporation transcend its corporate powers, they, and not the corporation, must answer for it. By the same course of fallacious reasoning it was also held that a corporation could not make a binding contract except by writing, under its corporate seal. I have just had occasion in *The Trustees of St. Mary's Church* v. *Cagger*, to refer to the change of the rule of law in this respect. It is equally changed in respect to wrongs. The same rule is now applied to corporations, as to individuals. The act of the agent is the act of the principal, as much in one case as in the other: A corporation will be liable for an injury done by its servants, if, under like circumstances an individual would be responsible. (*The Chesnut Hill and Spring House Turnpike Company* v. *Rutter*, 4 *Serg. & Rawle*, 6. *The Seneca Road Company* v. *The Auburn and Rochester Rail-Road Company*, 5 *Hill*, 170. *The Rector, &c. of the Church of the Ascension* v. *Buckhart*, 3 *Id.* 193.) In the latter case the sole point was, whether a special action on the case for an injury could be maintained against a corporation.

We have then, in the case under consideration, a wrongful act committed by the servants of the defendants, while engaged in their business, and for which the defendants may be sued. We have also an injury resulting from that wrongful act to the plaintiffs, for which they have the right to claim redress in an action on the case. This is all that is requisite to sustain this suit. The motion for a new trial must therefore be denied.