## SUPERIOR COURT.

### DECEMBER, 1851.

### CORAM SANDFORD, J.

MORRIS *against* BROWER, THOMPSON and FISH.

The keeper of a boarding-house, whose boarders are driven away by the offensive smells proceeding from a livery stable set up in an adjacent house, may maintain an action for a nuisance against the keeper of such stable.

The landlord may be joined in such action, if he leased to such stable-keeper a dwelling-house to be converted into a stable, under such circumstances as must have lead to a reasonable belief that such premises might thereby become a nuisance.

THE plaintiff was the lessee of a house, No. 648 Broadway, which she occupied as a boarding-house, and the defendant, Fish, was the owner of the adjacent house, known by the name of Constitution Hall. This building had been, for many years, used for public purposes, for political meetings, balls, &c., in the second story, and a bowling alley in the basement; it was deeper than the house occupied by the plaintiff, and had several small windows looking into plaintiff's yard, and giving air and light to the bowling alley.

In the spring of 1849, the defendant, Fish, demised "Constitution Hall" to the defendant, Thompson, for a term of

Morris v. Brower, Thompson and Fish.

years, to be used as a carriage repository and stable, and Thompson immediately demised the building for the same purposes to the defendant Brower.   The bowling alley was converted into an extensive livery stable, and the offensive smells proceeding from it, drove away the plaintiffs boarders and ruined her business.

*Jordan*, *Lord* and *Judah*, for the defendants, contended that keeping a livery stable was but a reasonable use of defendants' rights, and that they were not liable unless it was made to appear that there was in this case something more than ordinary in the smell or annoyance arising from it; and that, if the stable could be considered, in law, a nuisance, the landlords, Fish and Thompson, were not responsible for the act of their tenant.

*Anthon* and *Gerard*, for the plaintiff, contended that an offensive smell is, of itself, a nuisance, even although it should not be strictly hurtful.   That it is not necessary that the smell be unwholesome; that it is enough that it renders the enjoyment of life and property uncomfortable. *Rex* v. *White*, 1 Burr. 336; Selwyn's N. P. 974; *Bliss* v. *Hale*, 4 Bing. 133; *Flight* v. *Thomas*, 10 Ad. & Ellis, 590; *Rex* v. *Neile*, 2 Car. & Payne, 483; *Fish* v. *Dodge*, 4 Denio, 316, &c.

They also contended, that the landlords were properly joined in the action; that, where premises are let, the natural consequence of which is that they may become a nuisance unless properly attended to, they are liable if they afterwards become a nuisance by such use.   That they ought, in such case, to stipulate with the tenant, that he will do what is necessary to prevent the premises from becoming a nuisance, or reserve to themselves the power to

24

re-enter. *Rex* v. *Pedler*, 3 Nev. & Man. 627, and 1 Ad. & Ellis, 822; *Gardner* v. *Hunt*, 2 Bail. S. C. 165; *Mayor, &c., of New York* v. *Bailey*, 2 Den. 455; *People* v. *Irwin*, 4 Denio, 129.

SANDFORD, J.  The keeping of a livery stable in a populous city, is a lawful pursuit; it may become a nuisance, however, from its situation in relation to adjoining premises, and the manner in which it is conducted. If the jury shall find it was so conducted, that it made the plaintiff's enjoyment of his life and property, in the adjoining premises, uncomfortable, it is a nuisance, and Brown, the tenant, is clearly responsible. As to the defendants, Fish and Thompson, who stand in the character respectively of landlords, they are not liable unless, when they demised the premises, they knew or had reason to believe, from the nature of the business, the situation of the building and of the adjacent buildings or otherwise, that the business would be so conducted as to render it a nuisance, and this is for the jury.(1)

The jury found for plaintiff, against all the defendants, $500.

(1) It would be an endless task to enumerate all the instances of nuisance for which an action may be maintained. It may be sufficient to observe that the erection of any thing offensive, so near the house of another as to render it useless and unfit for habitation, is actionable: such as a swine stye, lime kiln, privy, smith's forge, tobacco mill, &c.  The principle is *sic utere tuo ut alienum non lædas.*  Selw. N. P. 974; Willes' Rep. 79.

It is not necessary that the smell should be unwholesome; it is enough if it renders the enjoyment of life and property uncomfortable. *Vide Mansfield, Rex* v. *White*, 1 Brow. 337.  The neighborhood has a right to fresh and pure air.   Abbot, C. J.  *Rex* v. *Neil*, 2 Car. & Payne, 483; *Catlin* v. *Valentine*, 9 Paige, 576; *Brady* v. *Weeks*, 3 Barb. S. C. 157.  It is presumed that a mere

Morris v. Brower, Thompson and Fish.

capricious exception is not included in this definition.   Such would necessarily be classed with mere *idiosyncracies.*    The smell must be such as is offensive to the generality of mankind.

Nuisances are not confined to the sense of smell; *any other sense may be so assailed* as to be productive of similar discomfort in the enjoyment of life and property.   Thus, where an ordinary blacksmith-shop, adjacent to a boarding-house, was hired out to a manufacturer of steam boilers, the incessant din rendered the enjoyment of life and property uncomfortable, and it was held to be a nuisance.   Bronson, C. J., applied to it the terms of the common definition.   "It is not necessary that the owner should have been driven from his dwelling, it is enough that the enjoyment of his property has been rendered uncomfortable."   *Fish* v. *Dodge,* 4 Denio, 316; *Baptist Church* v. *Troy R. R. Co.,* 5 Barb. 79.

Nor, again, is the creation of a nuisance confined to the senses. The term is so used in common parlance, but the law latin word "*nocumentum*" has a much broader signification, embracing many other matters indirectly injurious to person or property.   Thus, where a book-seller occupied a shop, by the side of a public thoroughfare, and suffered loss in his business in consequence of passengers being diverted from it by *obstructions of a builder, this* was held a nuisance.   So, also, where the defendant placed a cornice on his messuage adjoining plaintiff's garden, by means whereof quantities of rain were thrown from the cornice on the garden, and did damage, and incommoded the plaintiff in the enjoyment and possession of his garden.   *Fay* v. *Prentice,* 9 Jurist. 877, &c.

In the principal case, in the text, there seems to have been no serious difficulty on the question of nuisance.   The interesting, and to some extent novel question of the liability of the landlord, was the chief subject of contest.

That a building might be erected, in a populous city, for the stabling of horses, adjacent to valuable private dwellings, without inconvenience to the occupants, in the present improved state of architecture, must be admitted; but, in this case, the landlord had hired to the tenant a dwelling-house, already erected for another purpose, to be converted into a stable, which turned out in the end, whether from the insufficiency of the builder, or from other causes connected with it, a nuisance.   Whether, in such case, (the liability of the tenant being conceded,) the landlord should be exempt, was the question.   The learned judge, under certain qualifications, held him liable.

This decision is fully sustained by the case of *The King* v. *Pedley,* (1 Ad. & Ellis, 822,) in which it is expressly held, that if the owner of land erect a building which is a nuisance, or the occupation of which is likely to produce a nuisance, and let the land, he is liable to an indictment for such nuisance

Morris v. Brower, Thompson and Fish.

being created or continue during the term.    The person receiving the profit from the use, is answerable for the nuisance.    It is also sustained by the principles involved in the case of *Rex* v. *Moore*, 3 B. & Add. 184.    If a nuisance is the probable consequence of an act, the party is answerable as if it were his actual object.    If the experience of mankind must lead any one to expect the result, he will be answerable for it.    This remark applied to a case where the act of the owner of lands for his own emolument, (not a nuisance in itself,) lead to a nuisance on the outside of his premises.    The rule of law established by all the cases, is that the party, for whose profit that is done which constitutes the nuisance, shall be answerable for it.    Ib.    It is also abundantly sustained in our own courts.

The principle involved in *Gardiner* v. *Hunt*, (2 Barb. S. C. 165,) lies at the foundation of this responsibility.    Harris, J., in giving the opinion of the court, says: "It is a general principle of the common law, that the owner of premises is bound so to control the use of them as not to produce injury to others.    And if he permits another to place such premises in such a situation as to cause injury, he will be answerable."    Much more so, if he not only permits, but actually authorizes such use by contract, and derives a pecuniary advantage from it.    Thus, in *The People* v. *Ewen*, (4 Denio, 129,) he was held criminally answerable for a nuisance so created.    It was in that case decided, that one who demises a house with the intent that it shall be kept, and which is accordingly kept for the purposes of public prostitution, and who derives a profit from this mode of using the property, is punishable by indictment, for such act, as a principal offendor.    It may certainly then be concluded, a *fortiori*, that he must answer *civiliter* for any injury such nuisance may create to adjacent property.    *Vide Mayor*, &c., v. *Bailey*, 2 Denio, 445.    In a work entitled "Notes of recent leading cases," selected from the London Law Magazine, for 1846, '47, '48," (Law Lib. vol. 62, p. 35,) there is commentary on the case of *Rich* v. *Basterfield*, (11 Jurist. 696,) which is supposed to be hostile to the doctrine here advocated: it will be found, however, upon examination, in perfect harmony with it.

The rule sustained by *Rich* v. *Basterfield*, and approved of by the annotator, is this: that a landlord is not responsible for the acts of his tenant in creating a nuisance; nor for his acts in using an existing erection, (not a nuisance in itself,) in suchwise as to become a nuisance; because such liability attaches only to the person in possession.    To this rule there can be no objection, although the reason given for it may perhaps be liable to criticism. It is apparent, however, that it differs radically from the one under consideration.    Here the landlord, while in possession, and for his own emolument, in effect creates that which, in the language of the judge and in the finding of the jury, he knew or had reason to believe, when he demised the pre-

Morris v. Brower, Thompson and Fish.

mises, either from the situation of the building itself, and of the adjacent buildings, and the kind of business intended to be there carried on, might become a nuisance.    These ingredients are not found in *Rich* v. *Basterfield*, and the whole case seems very little more than an exemplification of the legal maxim " *qui sentit commodum sentire debet et onus.*"

How far a landlord shall be responsible, in cases where he has the power to abate a nuisance by an action for waste, and omits to exercise such right, or how far he may be responsible where he has neglected to protect himself by proper covenants, are questions which it is not necessary to consider here.    Such cases seem to fall within the true meaning of another maxim, " *qui non prohibet cum prohibere posset jubet.*"