[No. 14449. *En Banc.* August 27, 1918.]

DAVID REA *et al., Appellants,* v. TACOMA MAUSOLEUM ASSOCIATION, *Respondent.*[1]

NUISANCE—WHAT CONSTITUTES—MAUSOLEUM. An addition to a mausoleum will not be restrained as a nuisance injuriously affecting adjoining residence property merely because it is to become a permanent sepulture near a residence, when it will not by the emission of fumes or drainage affect the physical senses or health of people residing near it.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered May 21, 1917, dismissing an action to enjoin the erection and maintenance of a mausoleum, after a hearing before the court. Affirmed.

*Gordon & Easterday* and *Carroll A. Gordon,* for appellants.

*Fletcher & Evans,* for respondent.

PARKER, J.—The plaintiffs, Rea and wife, seek an injunction against the defendant, Tacoma Mausoleum Association, enjoining it from erecting and maintaining upon its land near their residence an addition to its present mausoleum. Trial upon the merits in the

[1]Reported in 174 Pac. 961.

superior court for Pierce county resulted in judgment denying to the plaintiffs the relief prayed for, from which they have appealed to this court.

Appellants have for several years owned and occupied their present home in Tacoma, consisting of three lots, each 25 by 120 feet in area, with a dwelling-house thereon. The north line of their premises is the width of two lots, fifty feet, south of and parallel with the south boundary of Oakwood Cemetery, which had been established and maintained for many years. Several years ago, respondent acquired land within the cemetery, bordering on its southerly boundary, opposite appellants' premises. In the year 1911, it completed on this acquired land a mausoleum in which it has deposited from time to time dead bodies, maintaining the same as a place of permanent sepulture. The south wall of the mausoleum is just within the south boundary of the land acquired by respondent from the cemetery, and the southeast corner thereof is north and a little west of appellants' house, about sixty-five feet distant therefrom. The mausoleum is 70 by 120 feet upon the ground, is thirty feet high, and contains 864 crypts, nearly all of which have been sold and a large number of which are already occupied. Since building its mausoleum respondent has acquired four lots approximately 50 by 260 feet in area, lying east and west along the south boundary of the land acquired by it from the cemetery, the easterly one hundred and twenty feet of which lies immediately north of appellants' premises. On these lots it proposes to erect an addition to its mausoleum containing 1,050 crypts, of substantially the same character as the present one, covering an area 50 by 215 feet, the south wall of which will be within an inch or two of the entire north boundary of appellants' premises. It is the erection

and maintenance of this addition which is sought to be enjoined, no complaint being made against the maintenance of respondent's present mausoleum. The outer walls of this addition, like the present structure, will be constructed of solid concrete eigth inches thick. They will have no openings except possibly one door in the easterly end wall. The crypts will be constructed in sections inside of the outer walls of the same material, but reinforced with iron rods so that each section will form a solid mass of reinforced concrete crypts, without any vacant spaces therein other than the crypts themselves. They will be of such strength, as described by the contractor, that "you could take a section of these crypts and tumble them down the side of a mountain and they would not break apart." The walls of the sections of the crypts will be six inches thick, and the southerly wall of the southerly section will be four inches from the southerly outer wall of the addition, so that between the southerly end of the crypts in that section and the southerly side of the outer wall there will be the two walls and the air space, occupying in all a width of about twenty inches. As each body is placed in a crypt the opening will be filled and sealed with concrete so that each casket and body will be immediately surrounded by solid concrete walls six inches thick. The crypt will then be air tight, except that small pipes will lead from each crypt to a common opening through and above the roof of the building. The record all but conclusively shows that the sanitation of this addition, like that of the main structure, will be practically perfect; so that no fumes or drainage whatever will escape therefrom which will be in the least detrimental to the health of the appellants or others living in the neighborhood, or offensive to their physical senses. The south wall of the addition will be about twenty feet from appellants' house

and about twelve or fourteen feet from the extreme northerly edge of a porch thereto. The construction of this addition will not be in violation of any statute of the state, or ordinance of the city of Tacoma relating to cemeteries or other places of sepulture.

The facts shown by this record, we think, render it clear that our problem is reduced to this: Are appellants entitled to injunctive relief, restraining the construction and maintenance of this proposed addition to respondent's mausoleum merely because of the fact that it is to become a place of permanent sepulture so near to their residence, when it will not by the emission of fumes or drainage affect the physical senses or health of appellants or others residing equally near to it? That is, are the mere claimed unpleasant thoughts which its presence constantly suggests, though such effect of its presence may lessen the market value of appellants' premises, such as to entitle them to the relief prayed for? The authorities seem to hold with practical unanimity that cemeteries as places of permanent sepulture for the dead are not nuisances *per se,* and this, it seems to us, must also be the law with reference to permanent sepulture in a mausoleum, built above the ground, when such mausoleum incloses bodies with equal security as by ordinary interment in the earth. A mausoleum would seem to be no more suggestive of the presence of the dead than the ordinary tombstones so common in our cemeteries. In 5 R. C. L. 235, the learned editors state the general rule of nuisance as applied to cemeteries as follows:

"As public cemeteries, for the orderly and decent sepulture of the dead, are necessary requirements for all populous communities, private convenience must yield to the convenience of the public in fixing sites for them and the courts should be particularly careful not to interfere to prevent such establishments, unless

the mischief be undoubted and irreparable. The decided weight of authority may be said to be to the effect that a cemetery is not *per se* a nuisance.''

In *Ellison v. Commissioners of Town of Washington,* 58 N. C. (5 Jones' Eq.) 57, 75 Am. Dec. 430, it is said:

''If the grounds be arranged and drained, and the burial of the dead be conducted as elsewhere in such establishments, we incline decidedly to the opinion, it will not be a nuisance, either public or private. The word nuisance is, of course, used here in its legal sense, and is confined to such matters of annoyance, as the law recognizes and gives a remedy for. The *unpleasant reflections* suggested by having before one's eyes, constantly recurring memorials of death, is not one of these nuisances. Mankind would, by no means, agree upon a point of that sort, but many would insist that suggestions thus occasioned would, in the end, be of salutary influence. The death-head is kept in the cell of the anchorite, perpetually before his eyes as a needful and salutary monitor. The nuisance, which the law takes cognizance of, is such matter as, admitting it to exist, all men, having ordinary senses and instincts, will decide to be injurious.''

In *Monk v. Packard,* 71 Me. 309, 36 Am. Rep. 315, in a decision which has become a leading one upon this subject, Judge Virgin, speaking for the court, touching the right of the plaintiff to injunctive relief against the maintenance of graves close to and in plain sight of his residence, said:

''The new cemetery was tastefully graded and suitable headstones erected at the several graves, the nearest being about forty feet from, and opposite to the window of the plaintiff's sitting room, and also in plain view from his front windows and door. As first located, the graves were only visible from the back rooms of his house.

''The plaintiff claimed this new grave yard to be a nuisance, for the reason that its. proximity and rel-

ative position render his residence uncomfortable and the enjoyment of his property disagreeable; and that it has rendered the water in his well unpalatable and unwholesome, and has lessened the market value of his property."

After holding that the evidence failed to show cause for relief upon the ground of contaminating the water in plaintiff's well, the court further said:

"Nor can the verdict be sustained upon .the sole ground of the cemetery's proximity to the plaintiff's premises, and the consequent depreciation of the market value of his property. For a repository of the bodies of the dead is as yet indispensable, and wherever located, it must *ex necessitate* be in the vicinity of the private property of some one who might prove its market value injuriously affected thereby. *New Orleans v. Wardens, etc.,* 11 La. An. 244.

"But assuming that the jury, in respect to these matters, found in behalf of the defendants and concluded that there was no injury to the plaintiff's property, or to his physical health or comfort, and based their verdict solely upon the ground that, on account of its relative position with the plaintiff's house, the cemetery inevitably meets his immediate view whenever he looks from the north window of his sitting room or steps from his door, and that thereby the comfortable enjoyment of his dwelling house is interfered with—then the defendants contend that the verdict is against law—upon the ground that such discomfort is one purely mental, and is not a cause of action.

"It cannot be doubted that the law recognizes that to be a nuisance which is naturally productive of sensible personal discomfort, as well as that which causes injury to property. *St. Helens Smelting Co. v. Tipping,* 11 Ho. L. Cas. 642. But it must injuriously affect the senses of the nerves. Thus sound, whether caused by a locomotive blowing off steam, the ringing of bells or the barking of dogs, whenever it becomes sufficient to injuriously affect residents in the neighborhood, is actionable. *First Baptist Church v. R. R. Co.,* 5 Barb. 79, and cases there cited. To become action-

able, the effect of sound must be such as naturally to interfere with the ordinary comfort, physically, of human existence, and the inconvenience must be 'something more than fancy, delicacy or fastidiousness.' Cooley, Torts, 600.

"Cemeteries are not necessarily even shocking to the senses of ordinary persons. Many are rendered attractive by whatever appropriate art and skill can suggest, while to others of morbid or excited fancy or imagination, they become unpleasant and induce mental disquietude from association, exaggerated by superstitious fears. The law protects against real wrong and injury combined, but not against either or both when merely fanciful.

"The human contents of these graves cannot, as they lie buried there, offend the senses in a legal point of view. The memorial stones alone affect the senses, and the same would result to the superstitious, though nothing human lay beneath them. If this burial ground is under the circumstances a private nuisance, then it is also a public nuisance to every traveller who passes on that road."

No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. Among the decisions holding in harmony with those above quoted from, we note the following: *Lambert v. Norfolk,* 108 Va. 259, 61 S. E. 776, 128 Am. St. 945, 17 L. R. A. (N. S.) 1061; *Dunn v. Austin,* 77 Tex. 139, 11 S. W. 1125; *Elliott v. Ferguson,* 37 Tex. Civ. App. 40, 83 S. W. 56; *Woodstock Burying Ground Ass'n v. Hager,* 68 Vt. 488, 35 Atl. 431; *Clinton Cemetery Ass'n v. McAttee,* 27 Okl. 160, 111 Pac. 392, 31 L. R. A. (N. S.) 945; *Musgrove v. Catholic Church of St. Louis,* 10 La. Ann. 431; *Westcott v. Middleton,* 43 N. J. Eq. 478, 11

Atl. 490. In the last cited case this view of the law was applied to an undertaking establishment.

The following decisions, read superficially, might seem to lend some support to the contention of counsel for appellants, but when critically examined they will each be found to involve the emission of fumes or drainage, affecting the physical senses of those in the neighborhood: *Clark v. Lawrence,* 59 N. C. (6 Jones' Eq.) 83, 78 Am. Dec. 241; *Jung v. Neraz,* 71 Tex. 396, 9 S. W. 344; *Bellevue Cemetery Co. v. McEvers,* 168 Ala. 535, 53 South. 272; *Lowe v. Prospect Hill Cemetery Ass'n,* 58 Neb. 94, 78 N. W. 488, 46 L. R. A. 237.

Counsel for appellants rely upon the following of our own decisions: *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647; *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879, Ann. Cas. 1912B 1128, 31 L. R. A. (N. S.) 827; *Densmore v. Evergreen Camp No. 147, W. O. W.,* 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608. The *Shepard* case involved only the power of the city of Seattle to pass and enforce an ordinance regulating the location and maintenance of private hospitals and sanitariums within the city, it being held that the city had such power as applied to the location and maintenance of private sanitariums for the treatment of inebriates and persons suffering from insanity. The *Everett* case involved the right to injunctive relief as against the maintenance of a private sanitarium for the treatment of persons afflicted with tuberculosis. Relief was granted as prayed for upon the theory that the fear of the public generally, not of the plaintiff in particular, of infection from such an institution by those living near it, was sufficient to entitle the plaintiff to relief under the facts of that case. It was not a question of mere fear or mental unpleasantness apart

from fear of physical infection of disease.  The *Densmore* case involved the right of the plaintiff to injunctive relief as against the maintenance of an undertaking establishment very close to his residence.  That decision may seem to contain observations lending some support to the contentions of counsel for appellants, but when critically read we think it will be found not to rest upon the mere unpleasantness attending the close proximity of dead bodies, but also upon the fact as therein stated that:

"There is evidence tending to show that noxious odors, gases, especially those arising from the deodorants used in cleansing the premises, would permeate the homes of respondents; that there is danger of infection and contagion from the proximity of the morgue, and the possibility of flies passing from one place to the other."

We think that neither of these of our decisions is controlling in this case.

There are other intervening plaintiffs and appellants in this case owning premises near the proposed addition to respondent's mausoleum.  We have referred to Rea and wife as though they were the only parties in the case merely for convenience of expression.  What we have said touching the claimed rights of Rea and wife also disposes of the contentions of the other appellants, adversely to them.

The judgment is affirmed.

MAIN, C. J., MOUNT, MITCHELL, TOLMAN, and HOLCOMB, JJ., concur.