[No. 20850.   Department Two.   December 22, 1927.]

LOUIS CHAMPA et al., *Respondents*, v. WASHINGTON COMPRESSED GAS COMPANY, *Appellant*.[1]

[1] NUISANCE (2, 8)—PRIVATE NUISANCE—ACTS CAUSING—EVIDENCE. The common-law definition of a nuisance is enlarged by Rem. Comp. Stat., § 9914, defining a nuisance as unlawfully doing an act which annoys, injures, or damages the comfort, repose, health, or safety of others, or renders other persons insecure in life or in the use of property; and thereunder one is entitled to recover permanent damages for the maintenance of a gas generating plant in close proximity to a residence, which caused an explosion killing trees on the adjoining premises, rendered the occupants nauseated and sick and was such as to put a reasonably intelligent and prudent person in fear, diminishing and essentially interfering with the comfortable enjoyment of their lives and property.

[2] DAMAGES (26)—NUISANCES (6)—MITIGATION OF DAMAGES. In an action for damages through the maintenance of a nuisance affecting the comfort and health of the owners of adjoining residence property, it is error to instruct the jury that it was the duty of the plaintiff to mitigate and lessen their damages by removing from the property, if necessary, and if reasonably within their means and ability.

[1]Reported in 262 Pac. 228.

Appeal from an order of the superior court for King county, Moriarty, J., entered May 3, 1927, granting plaintiffs a new trial after the verdict of a jury rendered in favor of the plaintiff, in an action for damages. Affirmed.

*Battle, Hulbert & Helsell,* for appellant.

*Stanley J. Padden* and *George F. Ward,* for respondents.

HOLCOMB, J.—This is an action for damages for the alleged maintenance of a private, permanent nuisance, resulting, in the last trial, in a verdict of five hundred dollars in favor of respondents. A previous trial had resulted in a verdict in their favor for twenty-five hundred dollars, which verdict was set aside and a new trial granted for error in instructions. The last verdict was set aside by the lower court upon the sole ground of errors in law in giving instructions Nos. 1, 4 and 5, and in refusing instructions requested by respondents numbered 2, 3 and 8.

The sole error assigned by appellant is in granting the motion of respondents for a new trial.

The complaint of respondents is framed upon the theory of recovery of damages sustained, in one action, from the maintenance of the nuisance, and not for equitable relief. They allege, in their complaint, that appellant has erected, directly across the alley from their residence, which had been established by them as a residence theretofore, a manufacturing plant, where it makes and stores gases, in a district composed principally of residences and within the corporate limits of the city of Renton, upon ground immediately adjoining that of respondents and within approximately one hundred feet from their house, where appellant built a factory building and several

storage tanks, and proceeded to and now is manufacturing and storing hydrogen and oxygen.

It is alleged that the gases are allowed to escape from the premises, greatly increasing the fire hazard and endangering the lives of the residents of the neighborhood; that gases, chemicals and noxious odors are discharged, which spread through the neighborhood; that such gases explode, and that the odors therefrom nauseate the respondent wife, and make her sick and ill; that the gases make it impossible to raise a garden; that the respondent has undergone a severe nervous shock, has suffered constant loss of sleep, has headaches, and has become weak, and has lost weight.

It is further alleged that the noisome gases and odors which are given off by the plant of appellant are liable to, and do, explode and exude from appellant's premises with loud detonations, and spread upon and over surrounding property, especially the premises of respondents; that because of such recurrent explosions and the presence, expulsion and release of explosive gases, chemicals and substances upon appellant's property, respondents are kept in constant terror of their lives and in constant fear for their safety, and are constantly subjected to sickness, and the comfortable enjoyment of their lives and property and their comfort and repose are especially interfered with.

The prayer is for the permanent depreciation in the value of the home, $4,000; for special damage to fruit trees and garden, $500; and for personal injury to Amelia Champa, $5,000; total, $9,500.

Appellant entered a general denial.

While there was considerable conflict in the evidence, many witnesses for respondents testified to the noisome odors coming from the plant of appellant, which were never known before the commencement of its operations; that they occurred at irregular intervals and for irregular periods of time of from half an

hour to from two to three hours, occasionally; that, whenever the noisome odors were especially strong and for lengthy periods, Mrs. Champa became nauseated and sick, and had to shut the windows of her house.

There was also competent evidence that, at one time, something like an explosion occurred, by which liquids and gases were discharged from a pipe in the plant to the outside, which destroyed six trees, of the value of three hundred dollars, belonging to respondents, some of the stuff coming in contact with the face of the husband, causing his face to burn and turn red for a time, and some of it falling upon the roof and sides of the house, spotting and discoloring the roof and wall of the house.

Appellant's evidence admitted this occurrence, but explained it by telling how a compressor got hot because of bad lubrication, and the foreman, in order to relieve the pressure, shut it down too quickly and threw open the wrong valve. The result was that, instead of letting the air pressure into the sewer, it was turned into the bottom of the tank containing liquid potash, which was forced in the form of a spray out of the air intake pipe in appellant's plant, causing the spray to fall upon the trees, house and garden of respondents. It was asserted by the witnesses for appellant that that was an accident, the cause of which had been completely obviated, so that it could never occur again, and, in any event, was not an explosion in any sense of the word.

There was also evidence, on behalf of respondents, of the damage to the trees, house and garden, of depreciation in the market value of their property, and the damage to the health of the wife, caused by the presence of the conditions complained of.

Hence, the evidence introduced tended to sustain the

recovery sought by respondents, viz: (1) The actual damage caused by the explosion that did occur; (2) the depreciation in the market value of respondents' property, caused by the conditions complained of; and (3) sickness, suffering, mental anguish and bodily infirmities of Amelia Champa caused by the existence of the alleged nuisance.

Instruction No. 1 given by the trial court, the giving of which was one of the reasons for granting a new trial, reads as follows:

"For the purpose of this case a nuisance can be committed in this way:

"(1.) To use any building or other place for the exercise of any trade or manufacture which, by occasioning obnoxious exhalations or offensive smells, becomes injurious to health or offensive to the senses or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of life and property, is a nuisance. No matter how modern nor how scientific the way operations may be carried on, if such becomes a nuisance as I have defined it, then the operator will be liable to the party whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance."

Instruction No. 2 given by the court is as follows:

"I further instruct you that, under the statutes of this state, a nuisance is defined as follows:

"'Nuisance consists in unlawfully doing an act or omitting to perform an act, which act or omission either annoys, injures, or endangers the comfort, repose, health or safety of others; or in any way renders other persons insecure in life or in the use of property.' [Rem. Comp. Stat., § 9914]

"Our statutes further provide:

"Whatever is injurious to health or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and is a subject for an action for damages."

No fault is found as to instruction No. 2 above given, but instruction No. 5, given by the court, is as follows:

"It is conceded that the plaintiffs' residence was. erected before the time defendant commenced its manufacture. Therefore, if the defendant, in the carrying on of its operations, is occasioning obnoxious exhalations or offensive smells, injurious to the health or offensive to the senses, or which constitute an obstruction to the free use by the plaintiffs of their property to such an extent as essentially to interfere with their comfortable enjoyment of life or property, then it becomes a nuisance as a matter of fact. You must, therefore, determine from the evidence whether or not such facts exist as to constitute the defendant's operation a nuisance."

Instruction No. 2 requested by respondents was as follows:

"You are instructed that, if you believe from the evidence in this case, that the defendant manufactures, prepares or stores on its premises materials or substances which are of a combustible or explosive nature, and such as would lead a person of ordinary intelligence, sensibilities and prudence to fear or believe that such substances would explode and endanger thereby the property of plaintiff, or the safety of those residing thereon, and that, because of such apprehension or fear, the market value of the plaintiff's property has been diminished, and the comfortable enjoyment of their lives and property is essentially interfered with, then the action of the defendant in keeping such materials or substances upon its premises would constitute a nuisance."

Instruction No. 3, requested by respondents, reads:

"I instruct you that, in determining whether the defendant has done some act as charged in the complaint and under the evidence admitted, which essentially interferes with the plaintiff's comfortable enjoyment of life and property, you have a right to consider such acts, if any, as would essentially interfere with the comfortable enjoyment of life and property by people of average and fair sensibilities. If you find that the plaintiffs or the plaintiff, Amelia Champa, are

in great fear or apprehension of their physical well being or her life, because of conditions that exist at defendant's plant charged in the complaint and that because thereof the plaintiffs or the plaintiff Amelia Champa is or are essentially interfered with in the comfortable enjoyment of their life and property, then you must determine whether such fears or apprehensions are well founded or reasonably grounded. If they are, then the defendant's plant is a nuisance. In this connection, you are further instructed that the test of whether such conditions, if any, are a nuisance turns on whether the plaintiffs or the plaintiff Amelia Champa are under a reasonable apprehension of danger and the reasonableness of such apprehension turns again not only upon the probable happening of the thing feared or apprehended, but also upon the realization of the extent of the injury which would ensue from the happening of the thing feared. That is to say, you may look to the consequences of the thing feared, if any, in determining whether the thing feared, if any, is reasonable. The party fearing need not have positive and uncontrovertible grounds for such fears, but it is sufficient to constitute a nuisance, if such fears interfere with the comfortable enjoyment of their lives and property and that such fears, if any, are predicated upon reasonable grounds and support a reasonable expectation that the thing feared may happen and that such expectation interferes with the comfortable enjoyment of their lives and property.''

Instruction No. 8, requested by respondents, reads:

''If you find from the evidence that the defendants are operating a plant at which explosive substances, or substances which are liable to cause explosions, are stored or made, and that such presence essentially interferes with the comfortable enjoyment of plaintiff's life or property, then I instruct you that the defendants are guilty of maintaining a nuisance, and the plaintiffs are entitled to be compensated for such damage, if any, as under these instructions they have sustained because of said nuisance.''

It will thus be seen that, by the instructions given and refused by the trial court, the claim of nuis-

ance made by respondents by the continual presence, storage and manufacturing by appellant of explosives and combustible gases and substances, was excluded from the consideration of the jury. The court limited the consideration of the jury to that of injury and nuisance based on offensive odors and the damage actually caused by the explosion that did occur. The court refused the instruction requested upon the theory of the existence of reasonable fear on the part of respondents by the continuance of the operations of appellant, as complained of, and the resulting damages therefrom to respondents.

Instruction No. 2, given by the court, was correct, so far as it went, in defining "nuisance" under our statutes.

Instruction No. 4 charged that damages to health and comfort should have been minimized, even by removal from the premises, if necessary and if reasonably within the means and ability of respondents.

[1] Regardless of the theory of the law in other jurisdictions, of which many citations are made by appellant, because of our statute, we have long held that the common-law definition and consequent remedy for a private nuisance is enlarged. We therefore held in *Everett v. Paschall*, 61 Wash. 47, 111 Pac. 879, Ann. Cas. 1912B 1128, 31 L. R. A. (N. S.) 827, that a tuberculosis sanitarium maintained in a residential section of the city would be enjoined as a nuisance, where the fear and dread of the disease was such that it depreciated the value of adjacent property to the extent of one-third or one-half, and interfered with the comfortable enjoyment thereof, disturbing the minds, nerves and sleep of the occupants, in view of the statutory provision defining a nuisance as any act that either annoys or endangers the comfort or repose of others. In the course of the decision there, although it was con-

tended with great force that tuberculosis was generally shown to be a non-contagious disease, nevertheless there was a constant fear and annoyance on the part of neighbors of such an institution, upon a common belief that it was dangerous. We there said:

"Our statute modifies, if indeed it was not designed to change this rule. Under the facts, we cannot say that the dread which is the disquieting element upon which plaintiffs' complaint is made to rest, is unreal, imaginary, or fanciful. In so doing, we are not violating the settled principles of the law, but affirming them."

In the same report, p. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608, in the case of *Densmore v. Evergreen Camp No. 147, Woodmen of the World*, it was held that the maintenance of an undertaking establishment in the residence section of a city, within a few feet of residences, while not a nuisance *per se*, might be enjoined as a nuisance, where it appeared that, although it was maintained with every sanitary precaution, noxious odors and gases permeated the nearby residences, and there was danger of infection or contagion.

In *Goodrich v. Starrett*, 108 Wash. 437, 184 Pac. 220, we also sustained the injunction of the maintenance of an undertaking establishment and morgue, in a residential section of a city, in such a manner as to affect the peace of mind and destroy the property values of the neighborhood. It will be observed that in that case, also, "the comfortable enjoyment of one's property" was again referred to as enlarging the common-law definition of private nuisance.

Again, in *Ferry v. Seattle*, 116 Wash. 648, 200 Pac. 336, 203 Pac. 40 (on rehearing), it was held that a city reservoir impounding water by a 56-foot embankment of soil, subject to slides and inevitable leakage, would be enjoined as a nuisance, where a large section

of the city, composed of men and women not ready dupes of conjectural and imaginary fears, but knowing a real and present reasonable apprehension that their lives and properties would be jeopardized by the maintenance of the reservoir. The bases for that decision were again our statutes defining nuisance and our decisions in the *Everett* and *Goodrich* cases, *supra,* and distinguishing, as was done in the *Goodrich* case, the case of *Rea v. Tacoma Mausoleum Association,* 103 Wash. 429, 174 Pac. 961, 1 A. L. R. 541, a case relied upon by appellant here. We think the last case is not applicable here.

As good a discussion as any is contained in the *Everett* case, *supra,* and we will repeat it here:

"The question is, not whether the fear is founded in science, but whether it exists; not whether it is imaginary, but whether it is real, in that it affects the movements and conduct of men. Such fears are actual, and must be recognized by the courts as other emotions of the human mind. . . .

"Comfortable enjoyment means mental quiet as well as physical comfort. . . .

"Nuisance is a question of degree, depending upon varying circumstances. There must be more than a tendency to injury; there must be something appreciable. The cases generally say tangible, actual, measurable, or subsisting. But in all cases, in determining whether the injury charged comes within these general terms, resort should be had to sound common sense. . . . The theories and dogmas of scientific men, though provable by scientific reference, cannot be held to be controlling unless shared by the people generally. . . .

". . . Under the facts, we cannot say that the dread which is the disquieting element upon which plaintiffs' complaint is made to rest, is unreal, imaginary, or fanciful."

Under the facts in the present case, there is much more apparent injury and damage done to both re-

spondents, according to their evidence, but especially to the wife, than was shown in the *Goodrich* case, *supra*. In that case the maintenance of the undertaking establishment and morgue was permanently enjoined. In this case, the harsh remedy of permanent injunction is not sought, but only damages.

[2] Appellant also contends that instruction No. 4, given by the court, which put upon respondents the duty of mitigating the damages, was correct, and cites cases to the effect that it is the duty of plaintiffs in damage suits to do all in their power to mitigate and lessen the damages, citing: *Harding v. Ostrander R. & Timber Co.*, 64 Wash. 224, 116 Pac. 635; *Dahl v. Wagner*, 87 Wash. 492, 151 Pac. 1079; *Cannon v. Oregon Moline Plow Co.*, 115 Wash. 273, 197 Pac. 39; *Geissler v. Geissler*, 96 Wash. 150, 164 Pac. 746; *Hay v. Long*, 78 Wash. 616, 139 Pac. 761; *Gay v. Perry*, 205 Ky. 38, 265 S. W. 437.

All, except the last of the cases cited, were cases for damages for tortious injuries. The last case cited, from Kentucky, was one where the court said that the nuisance complained of was but a temporary nuisance, which is not the case here.

In 20 R. C. L. 494, § 109, the general rule is stated as follows:

"Occasionally it has been contended that the plaintiff is guilty of a contributory wrong in having failed to abate the nuisance of which he complains. It has been held generally that a person is not bound to abate a nuisance from which he suffers, and that his failure to do so does not preclude a recovery. On a like principle it is held that no duty rests on the owner of property which is being injured by a nuisance to take active measures to prevent further injury in order to minimize the damages for which the wrongdoer may be liable."

1 Wood on Nuisances (3d ed.), § 435, states the general rule as follows:

"It is the duty of every person or public body to prevent a nuisance, and the fact that the person injured could, but does not, prevent damages to his property therefrom is no defense either to an action at law or in equity. A party is not bound to expend a dollar, or to do any act to secure for himself the exercise or enjoyment of a legal right of which he is deprived by reason of the wrongful acts of another."

17 C. J. 777, under the heading "Injury to Property," states the rule to be that the requirement of minimizing damages is held not to apply in cases of nuisance, or in cases of intentional, or positive and continuing torts.

Under the facts, as shown in this case, proper and competent to submit to the jury, and under the law as it exists in this state, we are satisfied, as was the trial court, that it erred in giving instructions Nos. 1, 4 and 5, and in refusing instructions Nos. 2, 3 and 8 as requested by respondents. The trial court was, therefore, justified in granting a new trial.

The order is affirmed.

MACKINTOSH, C. J., FULLERTON, ASKREN, and MAIN, JJ., concur.