[No. 16111. *En Banc.* December 8, 1920.]

T. B. HUGHES *et al., Appellants,* v. WILLIAM McVAY *et al., County Commissioners of Spokane County, Respondents.*[1]

PLEADING (90)—OBJECTIONS RAISED UNDER GENERAL DEMURRER— MISJOINDER OF CAUSES OF ACTION. A complaint is good as against general demurrer if it states any cause of action, although apparently it embraces more than one cause without separately stating them.

COUNTIES (41, 67)—CONTRACTS—POWERS OF COMMISSIONERS—STATUTES—NECESSITY FOR ESTIMATE. Rem. & Bal. Code, §§ 9208-9210, requiring counties to make annual estimates of public expenses as a basis for tax levies, is a revenue and taxation statute and has no application to the requisites or validity of a contract for the erection of a detention home, pursuant to Rem. Code, § 1987-13, which the county had power to contract for under Rem. Code, §§ 3822, 3890.

NUISANCE (2)—WHAT CONSTITUTES—CHILDREN'S DETENTION HOME. The erection of a children's detention home, required by statute to

[1]Reported in 194 Pac. 565.

be provided by a county, will not be enjoined as a nuisance, detrimental to residential property in the neighborhood, in view of Rem. Code, § 8311, providing that nothing done under express authority of a statute can be deemed a nuisance, where the complaint is wholly lacking in any proper allegation of abuse of discretion or any purpose to do other than the law requires.

BRIDGES and MACKINTOSH, JJ., dissent.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered March 26, 1920, upon sustaining a demurrer to the complaint, dismissing an action to enjoin the erection of a detention home. Affirmed.

*Mulligan & Bardsley,* for appellants.

*Joseph B. Lindsley* and *Fred J. Cunningham,* for respondents.

MITCHELL, J.—This action was instituted against William McVay and others, as county commissioners of Spokane county, to prevent the building and maintenance of a house of detention upon property in the vicinity of the residence of the plaintiffs in the city of Spokane. The appeal is based upon the alleged error of the court in sustaining a demurrer to the complaint, and in entering a judgment dismissing the action on plaintiffs' refusal to further plead.

The complaint shows that on September 19, 1919, the county commissioners passed a resolution which, among other things, recited that the existing detention rooms were inadequate and could not be made sufficient by alterations or repairs, and that a new site was necessary; and provided that the county should purchase block 11, Abernathy's Addition to Spokane, as convenient and desirable for such home, for the sum of $7,500, to be paid for, part cash and the balance on January 2, 1920, to be raised by the levy of a tax and paid out of the current expense fund. The

complaint further shows a resolution passed at a regular session of the board on November 14, 1919, wherein, among other things, after reciting that the county had already acquired the real property (describing it) for a detention home, it was resolved that the board take steps on or before March 20, 1920, to erect and equip the detention home, and that in due time county bonds be issued and sold to pay the cost of constructing and equipping it.

Paragraph VIII of the complaint alleges:

"That the property described as Block Eleven of Abernathy's Addition to Spokane Falls lies south and east of the property owned by the plaintiffs, which property of the plaintiffs has been constructed, maintained and used as a home, having relied upon this section being a strictly residential district; that their home faces the east, and the county commissioners are threatening to erect a detention home upon the property attempted to be purchased by them, which structure will face the west; that said structure is to be used as a jail for juvenile delinquents, will have barred windows and be enclosed by a high fence, which will be a damage to the plaintiffs, in that it will depreciate the value of their property from thirty-three and one-third (33 1/3) to fifty (50) per cent; that it will be a hindrance and obstruction, and will essentially interfere with the enjoyment of their property for the purposes for which it was purchased, maintained and used; that it will render all property in the immediate vicinity less desirable and will cause adjoining property to depreciate in a like amount."

Further, the complaint alleges that the commissioners, in passing the two resolutions, acted without notice and without authority of law; that they threaten to carry out the unlawful purpose; that the plaintiffs have no adequate remedy at law; that plaintiffs had no actual notice of the acts of the commissioners until afterwards; and that plaintiffs bring the action on

behalf of themselves and all other property owners similarly situated.

There is no allegation that the commissioners acted fraudulently or dishonestly in selecting the site, nor that the property selected is not reasonably worth $7,500. There appears to be some complication or confusion in the allegations of the complaint, which seems to embrace more than one cause of action without separately stating them. But, it is correctly contended that, tested by a general demurrer, the complaint is good if upon its face it states any cause of action. The cause is presented in this court by the appellants upon two propositions: (1) that the respondents, in attempting to purchase the site for the detention home, acted without power and authority because of the violation of §§ 9208, 9209 and 9210, Rem. & Bal. Code; and (2) that the structure attempted to be provided for would be a nuisance.

As to the first proposition: It is not contended, as we understand, that the commissioners have no power to build a detention home, but rather that because, in going about the enterprise, the board ignored the provisions of the three sections of the code already referred to, and hence its action was and is without any legal effect. Section 9208, Rem. and Bal. Code, provides, among other things, that it shall be the duty of county commissioners, on or before the first Monday in September of each year, to make estimates of the amount required to meet the public expense for the ensuing year, to be raised by taxation. It requires the estimates to be itemized, ''showing under separate heads the amount required for each department, public office, public official, for each public improvement, for the maintenance of each public building, etc.'' Section 9209 of Rem. & Bal. Code, provides,

among other things, that the estimates required in § 9208, together with a notice that the board will meet on the first Monday in October for the purpose of making tax levies, shall be published at least two consecutive weeks following the adoption of estimates. Section 9210, Rem. & Bal. Code, provides, among other things, that the county commissioners shall meet on the first Monday in October, when and where any taxpayer may appear and be heard in favor of or against any proposed tax levies, after which hearing the commissioners shall proceed to make, determine and decide the amount of taxes to be levied. Upon citing these statutes appellants call attention to the cases of *Arnott v. Spokane*, 6 Wash. 442, 33 Pac. 1063; *Snohomish County Abstract Co. v. Anderson*, 9 Wash. 349, 37 Pac. 471; *Times Publishing Co. v. Everett*, 9 Wash. 518, 37 Pac. 695, 43 Am. St. 865; *Smith v. Lamping*, 27 Wash. 624, 68 Pac. 195; *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226; *Bier v. Clements*, 98 Wash. 310, 167 Pac. 903; *Osborne, Tremper & Co. v. King County*, 76 Wash. 277, 136 Pac. 138; and *Northwestern Improvement Co. v. McNeil*, 100 Wash. 22, 170 Pac. 338, in support of their claim that the contract for the purchase of the site for a detention home is illegal and void.

It is plain, the cases mentioned are not applicable here. They are cases which, generally speaking, cover contracts made in violation of a manner fixed by law, or where there was fraud and collusion, or where a public official undertook to bind the county without authority of law or the authorization of the county commissioners, or where the commissioners were attempting to provide something at the county's expense in addition to that which the law had specially provided for in the particular matter involved, or where

no power whatever had been conferred by statute concerning the subject-matter in controversy. The three sections of the code are revenue and taxation statutes. They are not designed to confer or limit the exercise of the power to make contracts. They, or any other law that we are aware of, contain no provision to the effect that contracts for those things the tax levy is made to provide for, shall be illegal unless the subject-matter of the contract is included in the estimate, notice and tax levy.

As a matter of legislative history it is worthy of notice that a comprehensive act known as the budget system was passed by the legislature of 1915 (Laws of 1915, chapter 49, p. 159; §§ 9208-1 to 9208-24, Rem. Code), which required the listing of such contracts in the published estimates for tax levies, wherein (sec. 21) is found a specific provision that all orders, authorizations, allowances, contracts, payments or liabilities to pay, made or attempted to be made in violation of the act shall be void. The act, however, was referred by petition to a popular vote and failed to pass at the general election November 7, 1916. See Laws of 1919, p. 754, referendum measure number 9. The powers and duties of county commissioners in making estimates and levying taxes are separate and distinct from those relating to the power and manner of making contracts. There can be no question of the power of the respondents in this case under the provisions of §§ 3822 and 3890, Rem. Code, to provide for the detention home. Indeed, by the mandatory directions of § 1987-13, Rem. Code (as Spokane county contains more than fifty thousand inhabitants), the county is required to provide and maintain at public expense a house of detention.

Upon this phase of the case appellants conclude by saying "they cannot possess the power to buy a whole

city block without proceeding in the manner provided by law." That is, appellants are seeking to enjoin the purchase of the site on the theory that the revenue and taxation statutes require the listing of the consideration therefor as a prerequisite to the power to contract. The theory is manifestly erroneous.

As to the failure to give the taxpayers notice, it is immaterial as to the making of the contract for the purchase of the site, as already seen, and besides, the respondents did not find any necessity for a new detention home until September 19, some time after the first Monday; while as to the tax levy, the statute itself provides that a hearing shall be had and the levy made on the first Monday in October. No special notice of it was required.

We think appellants' second proposition is also without merit. The building of a house of detention is an entirely different matter from the management of such an institution after it is in operation. Such a house may have the possibility of mismanagement to the extent of giving rise to a cause of action in favor of an adjacent proprietor in the protection of his private convenience and comfort, but the presumption is against mismanagement and it is in no way involved in this case. Courts will not indulge in conjecture or uncertain apprehensions, and upon such ideas or imaginations enjoin the building of a public necessity. Appellants do not contend the county commissioners are planning, in the maintenance of the home, to mismanage it so as to render it a nuisance. Their contention is that the building and maintenance of the home (such maintenance, of course, as the law contemplates) at the place selected will constitute a nuisance *per se*, as affecting their property and the enjoyment of it as a residence. The contention is answered by the positive terms of § 8311, Rem. Code, which says:

"Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

It has been seen that the commissioners have power under the general statute to acquire real estate and erect the house, while the juvenile court law requires them to build it. The complaint is wholly lacking in any proper allegation that the respondents have abused their discretion or judgment in either selecting the location, or in the kind of building to be erected. The complaint shows no steps taken by the commissioners other than the two resolutions, neither or both of which, upon the faces thereof, disclose any purpose to do other than the law requires with reference to the plan of the building or otherwise. The three cases relied on in support of the appeal are not helpful. *State v. Houghton,* 144 Minn. 1, 176 N. W. 159, discusses the constitutionality of a Minnesota law empowering cities to establish restricted residence districts; the subject of nuisance was not involved. *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879, Ann. Cas. 1912 B 1128, 31 L. R. A. (N. S.) 827, was a case of a private tuberculosis sanitarium maintained in a residential section. That it is not applicable here may be gathered from only a casual reading of it, and from a note of it in *Rea v. Tacoma Mausoleum Ass'n,* 103 Wash. 429, 174 Pac. 961, 1 A. L. R. 541, as follows:

"It was not a question of mere fear or mental unpleasantness apart from fear of physical infection of disease."

The case of *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647, involved the maintenance in a crowded locality of a private hospital tending to spread contagious diseases. The institution

had been erected and was being maintained in defiance of the terms of a valid ordinance of the city.

Our attention has not been called to any case, nor has independent investigation discovered one, upon the subject of nuisances in connection with this kind of a public building. In the case of *Rea v. Tacoma Mausoleum Ass'n, supra,* involving a private enterprise, where it was claimed unpleasant thoughts, which the presence of a large addition to a mausoleum reaching within sixty-five feet of the plaintiff's residence, would be constantly suggested, and in the face of the contention that the addition would lessen the market value of the plaintiff's property, we held the building and maintenance of it would not be restrained as a nuisance, injuriously affecting adjoining residence property, when unattended by damaging drainage or fumes sensible to the complaining party.

Respondents call attention to the decisions of the courts in other states as to the building and use of jails and prisons—institutions of public necessity and therefore required to be built. The substance of the rule, as gathered from the cases, is given in 20 R. C. L. (Nuisances) p. 411, § 28, as follows:

"And, accordingly, it has been held that the erection of a jail or prison by the municipal authorities of a city, within the limits thereof, is not an invasion of the property rights of the owner of adjacent lands, and therefore not the foundation of an action for damages or a suit for an injunction to restrain its erection. But after the erection of such a building, it is the duty of the public authorities to use and maintain the same in a proper and orderly manner, and, if they permit it to be so negligently kept as to create a nuisance, the damage caused thereby may give a right of action to one who sustains special and particular injury, not for the erection, but for such negligent maintenance."

But, let that be as it may, the situation here is more favorable to the unhampered activities of the public authorities than if it were a case of a jail or prison. The juvenile court law is the reflection of modern thought. It embraces the care of none but children. It declares "all delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the courts." It provides:

"The court may, at any time, make any order (temporary or permanent) committing the child to some suitable institution, or to the care of some reputable citizen of good moral character, or to the care of some training or industrial school as provided by law, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent, neglected or delinquent children."

Its scheme is the good and welfare of the child. It plans protection and preparation for usefulness without any design of punishment. As was said of the law in *In re Lundy*, 82 Wash. 148, 143 Pac. 885, Ann. Cas. 1916 E 1007:

"Its purpose is not to restrain criminals to the end that society may be protected and the criminal perchance reformed; it is to prevent the making of criminals. Its operation is intended to check the criminal tendency in its inception, and protect the unformed character in the facile period from improper environment and influences. In short, its motive is to give to the weak and immature a fair fighting chance for the development of the elements of honesty, sobriety and virtue essential to good citizenship."

In its administrative plan § 13 requires such a county as Spokane to build and maintain, at public ex-

pense, a house of detention. The house is to be "separated or removed from any jail or police station." It is "to be in charge of a matron or other person of good character wherein children within the provisions of the act, when necessary, shall be sheltered." The institution is under the direct control of the superior court through its appointees. The court appoints the matron, or other person of good character, who has immediate charge of the house of detention, and it also designates one or more discreet persons of good character to serve as probation officers to assist in promoting the interests and welfare of the children. The house is not a jail or prison, but only a place of shelter surrounded by matronly influences, a home, during the transient and temporary detention necessarily occurring in the progress of cases in the superior court towards the final disposal of the children. The home would reasonably suggest the statutory scheme which in theory and practice delineates promise, as well as the seasonable efforts of a commonwealth in the building of character.

It is this orderly and respectable treatment and surroundings which we must bear in mind will prevail in the maintenance of the home as we are called upon to decide if the building shall be enjoined as a nuisance. The site selected consists of a whole block of property. Its distance from appellants' property (situated in another block) is not given. At most, the two blocks are not nearer to each other than diagonally across two streets. The complaint is silent as to the size of the city blocks and the exact location of appellants' property in lot 7.

Under this situation, to hold in favor of the complaint in this case would amount, in our opinion, to an indulgence in conjecture, imaginary fear and uncer-

tain apprehensions, and give countenance to a fastidiousness that finds no comfort in the law.

Judgment affirmed.

Holcomb, C. J., Mount, Main, Parker, and Tolman, JJ., concur.

Bridges, J. (dissenting)—I am unable to concur in what is said in the majority opinion on the first point discussed. The county commissioners passed two resolutions; one provided for the purchase of the property involved, and that the revenue for the purchase price should be raised by levy of taxes; the second directed that the county proceed to erect on the premises to be purchased a detention home and that the same be equipped. It further provided that negotiable coupon bonds of the county should be issued for the purpose of paying for such erection and equipment. The purpose, in part, of this action was to restrain the county commissioners from carrying out and consummating their program, because they had not complied with §§ 9208, 9209 and 9210, Rem. & Bal. Code.

The first section expressly provides that it shall be the duty of the county commissioners, on the first Monday of September of each year, to make estimates of amounts required to meet the public expense for the ensuing year, and that such estimates shall be itemized and shall show "the amount required . . . for each public improvement" and "for the maintenance of each public building, structure or institution" and "the construction, operation and maintenance of each public utility, and shall contain a full and complete disclosure and statement of the contemplated expenditure for the ensuing year . . . ." Section 9209 provides that the estimates made as provided in the previous section shall be published for a certain length of

time, and that there shall be given notice of a meeting to be held for the purpose of making tax levies. Section 9210 provides for the appearance of taxpayers at such meetings and that "all taxes shall be levied or voted in specific sums, and shall not exceed the amounts specified in such published estimates."

The plain purpose of this legislation was to require the board of commissioners to annually, in advance, estimate the amount of expenditures for the ensuing year and to fix a budget which could not be exceeded. It had been the habit and custom of boards of commissioners to make provision for the financial needs of the county from time to time as such needs appeared. They did not anticipate their wants, nor provide in advance therefor. The result was that counties often found themselves in financial distress, and the taxpayer had no opportunity to know in advance what his obligations would be or to be heard concerning them. Counties lived from day to day.

But, as I read it, the majority opinion says the action of the board of commissioners does not come within the purview of the statutes, because they relate to revenue and taxation, while here the board was only making a contract. In my opinion, this is an erroneous construction. They are much broader than that. They apply as much to the contraction of the debt as to the ways and means of discharging it. They enter into virtually every act of the board involving the financial life of the county. The board must in advance include every item of probable expense in the estimate or budget, before it will be authorized to incur such expense. The first step of all is the budgeting of the contemplated expense. If it is not necessary to budget the expense of constructing and equipping a detention home, then it is not necessary to budget the

expense for operating the farm for the poor, or for repairs to county buildings, or any other item of expense.

And thus is the statute made an empty thing. The statute does not limit itself to taxation when it requires the expense "required . . . for each public improvement" or for "the construction, operation and maintenance of each public utility" to be budgeted. How can it be said that in this instance the county is complying with the provision to the effect that taxes levied "shall not exceed the amounts specified in such published estimates"?

It is not necessary to determine whether an emergency would excuse non-compliance with the statute, because no such emergency is shown here.

The statute contemplates that the taxpayer, who, after all, is the person most vitally interested, shall have the privilege of having something to say concerning the contraction of a debt by the county, as well as concerning the manner of the payment of the debt.

Since the complaint alleged that the board had not complied with these provisions of the statute, it stated a cause of action and it was error to sustain the demurrer.

MACKINTOSH, J. (dissenting)—I concur in the foregoing dissent which to my mind correctly states the rule of law, from which the majority opinion has grievously divaricated.