[No. 30461.  *En Banc.*  July 28, 1948.]

W. W. Shields *et al., Respondents,* v. Spokane School District No. 81, *Appellant.*[1]

[1]Reported in 196 P. (2d) 352.

*Leslie M. Carroll, Hugh H. Evans,* and *Hamblen, Gilbert & Brooke (H. E. T. Herman,* of counsel), for appellant.

*Geo. W. Young,* for respondents.

*The Attorney General, Lucile Lomen, Assistant, Harold Shefelman, Special Assistant, Skeel, McKelvy, Henke, Evenson & Uhlmann, Willard E. Skeel,* and *Altha P. Curry, amici curiae.*

SCHWELLENBACH, J.—This is an appeal from a decree adjudging that the construction and maintenance of temporary buildings on the Webster grade-school property in Spokane, and the operation of a proposed trade school therein and thereon, constitutes a public nuisance which shall be abated and the temporary structures removed therefrom; that the alteration, construction, and maintenance and purposed use of the Webster grade-school property as a trade school constitutes a violation of the zoning ordinance of the city of Spokane, from which the defendant shall be enjoined; that a trade school is not a common school within the purview of the constitution of the state of Washington (Art. IX, §§ 2 and 3); that the maintenance and operation of the purposed trade school through funds allocated to the use of the common schools constitutes an unlawful diversion

of such funds and is enjoined; and that the effective date of the injunction shall be June 30, 1949.

The Webster school occupies a city block in the city of Spokane. It is bounded on the north by Sinto avenue, on the south by Sharp avenue, on the west by Standard street, and on the east by Dakota street. It was built in 1900 and maintained continuously as a grade school until September, 1940. At that time, the student enrollment had dropped to approximately one hundred students and the school board closed the school. In August, 1941, it was leased to Gonzaga University and operated as a private high school until April, 1945, when the building was partially destroyed by fire.

In the early part of 1946, plans were initiated to remodel the Webster school building. The second floor was eliminated and the basement and first floor converted in such a manner that it could be used as an adjunct to the Hawthorne trade school, then being maintained by the school board. The plans were drawn so that, with very little expense, the building could be reconverted into an elementary school to accommodate one hundred fifty pupils, if and when the necessity therefor arose. No objection was made by the residents of that area to the change. The new building was of brick construction, and was a decided improvement over the old building, which was especially unsightly after the fire.

But in the latter part of 1946, articles appeared in the press indicating that the school board was contemplating bringing in some wooden barracks from Baxter hospital, placing them on the grounds, and maintaining them, together with the brick building, as a trade school, on a rather large scale. Immediately there was great unrest among the people living in the immediate vicinity. Meetings were held, and a formal protest was prepared and presented to the school board.

The subsequent action of the school board in this respect is rather enlightening. September 11, 1946, the board considered the possibility of securing necessary Federal aid, through the Federal works agency, to increase the facilities of the trade school in order to train veterans. This would

consist, in the main, of buildings, equipment, tools, furniture, etc. October 29, 1946, the board employed an architect to prepare drawings and specifications. It also decided to determine if the proposed buildings could be lawfully placed on the Webster school grounds. October 29, 1946, Superintendent of Schools Shaw wrote to the city plan commission, asking permission to locate temporary housing on the Webster site. November 2, 1946, the city plan commission replied that it had no objections, that the city zoning ordinance did not prohibit temporary school construction.

November 26, 1946, a protest was filed with the school board, signed by twenty-seven property owners residing in the immediate vicinity. November 27, 1946, a hearing was held on this protest. Superintendent Shaw advised that plans were very indefinite at that time and that few facts were known. He considered it a possibility that an addition could be made at the present trade school site. The president of the board stated: "We will keep you advised of our building plan so you may have a chance to voice your opinions before we go ahead." The petition was tabled for the present.

December 26, 1946, the board wrote to A. W. Codd, the spokesman for the property owners, that a meeting of the board would be held January 2, 1947. (Mr. Codd was in California and did not receive the letter until several weeks after the meeting.) January 2, 1947, the board approved plans for the improvement and granted authority to proceed. (No protestants were present, none having received notice of the meeting.) January 21, 1947, a written agreement was entered into between the Federal works agency and the school district, by which the FWA agreed, at its own expense, to provide a building or buildings, to be located on the grounds of the "Spokane Trade School."

Mr. Codd learned of this action on February 12, 1947, and wired the board to reconsider its action. A hearing was held February 26, 1947. However, the government had already taken steps to award contracts for the construction of the buildings, and the board agreed that no action could be taken to change the situation.

A request was then made to the city plan commission to hold a public hearing on the proposal to conduct a trade school at the Webster site. The commission was of the opinion that it did not have jurisdiction to either grant or deny the school district ·permission to erect or maintain a trade school or other school structure used for the purposes of instruction. This was based upon the fact that the land occupied by the Webster school was used for school purposes by the school district prior to the adoption of the zoning ordinance. An appeal was then taken to the city council, which refused to act on the ground that it had no jurisdiction. The present action was then commenced.

The area involved in this action has been classified as a Class I residential district. Ordinance No. C 4533 (the zoning ordinance of the city of Spokane), § 4, provides:

"In the Class I, Residential District, no building or premises shall be used, and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, except for one or more of the following uses: * * *

"(4) * * * (h) Churches and schools (either public or private) may be allowed by special permit from the Commission after public hearing and examination of the location upon due proof to the satisfaction of the Commission that such school or church will not be unduly detrimental to the adjacent and surrounding property."

The neighborhood surrounding the Webster school consists of nice homes; many of them old, but well kept up. The values range on the average between six thousand dollars and fourteen thousand dollars, although some homes have a value as high as thirty thousand dollars. There are no factories in the area. It is strictly a residential district. Most of the families are large. One witness testified that his was an average family consisting of a son and seven little girls. There is a prevalence of small children in the neighborhood.

The temporary buildings consist of two buildings which were moved from Baxter hospital. They were cut in two lengthwise, then placed on a concrete foundation approximately ten feet apart, making rooms in between, with a roof over the whole structure. It covers an over-all area of ap-

proximately sixty-two feet by two hundred ninety feet. It is divided into eight shop rooms.

It is planned to teach the following in the various shops: *auto accessories*, using generators and starters; *auto engines*, disassemble and assemble, using gasoline, emery wheels, grinders, presses, lathes; *battery generators*; *auto painting*, using spray guns, the fumes to be controlled; *body and fender works*, heating metals with acetylene torches, resulting in noise and fumes; *diesel accessories*, learning to repair, resulting in considerable noise; *carpentry*, using saws, nails, and planes; *bricklaying and plastering; woodworking*, using lathes and saws; *aircraft*, using airplane engines, small trainer plane, drill presses, lathe, revving up motors; *acetylene welding* and *electric welding*, both giving off fumes and resulting in a certain hazard.

The Spokane trade school, of which the proposed project is to be an adjunct, is located on Fourth avenue, between Wall and Post streets. This is virtually a commercial and industrial district.

The objection of the property owners to the proposed installation of a trade school at the Webster site consisted of depreciation in value, unsightliness of temporary buildings, undue noise, fumes, danger of fire and explosion, inconvenience due to traffic congestion, and danger to children due to traffic. It is planned to operate two shifts, from nine a.m. to nine p.m. Most of the students would be adults and would drive their own cars.

Error is assigned in decreeing that the construction and maintenance of the temporary buildings and the operation of the proposed trade school therein constitutes a public nuisance; that the alteration, construction, and maintenance of the property constitutes a violation of the zoning ordinance of the city of Spokane; that the trade school purposed to be constructed is not a common school within the purview of the Washington constitution (Art. IX, §§ 2 and 3); that the maintenance and operation of the purposed trade school through funds allocated to the use of the common schools constitutes an unlawful diversion of such funds.

Nuisance has been defined by Rem. Rev. Stat., § 9914 [P.P.C. § 81-23], as follows:

"Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property."

"A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal." Rem. Rev. Stat., § 9912 [P.P.C. § 81-25].

"Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Rem. Rev. Stat., § 9916 [P.P.C. § 81-29].

*Hughes v. McVay*, 113 Wash. 333, 194 Pac. 565, 14 A. L. R. 681, was an action to prevent the board of county commissioners of Spokane county from building and operating a detention home on a site purchased by the commissioners, after a resolution had been passed by them reciting the necessity for a new home and providing for the purchase of that particular site. In passing on the sufficiency of the complaint, this court said:

"Appellants do not contend the county commissioners are planning, in the maintenance of the home, to mismanage it so as to render it a nuisance. Their contention is that the building and maintenance of the home (such maintenance, of course, as the law contemplates) at the place selected will constitute a nuisance *per se*, as affecting their property and the enjoyment of it as a residence. The contention is answered by the positive terms of § 8311, Rem. Code, which says:

" 'Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.' "

*Linsler v. Booth Undertaking Co.*, 120 Wash. 177, 206 Pac. 976, was an action to restrain the defendant from conducting an undertaking establishment, claiming that it constituted a nuisance. The establishment was within a district where

it could be located under an ordinance of the city of Seattle. After quoting § 9914, we said:

"It will be noticed by this statute that a nuisance consists in doing an act which is unlawful and which injures or endangers the comfort, repose, health or safety of others. The business complained of, being conducted in pursuance of the ordinance which has the force of a general law, was not made unlawful by this statute. The statute applies to the unlawful doing of an act. If the statute were given the effect of making an undertaking business a nuisance when placed in close proximity to the residence of others it would deprive the city of its right to exercise of police power in this regard where respondent's property was affected thereby. It is not claimed in this case that the ordinance was unreasonable and therefore should be set aside as being such. The case of *Densmore v. Evergreen Camp No. 147, W. O. W.,* 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N.S.) 608, is distinguishable. There, there was no ordinance of the city of Everett authorizing the undertaking establishment in the place where it was conducted, while here, as already pointed out, the respondent's business is located within the district prescribed by the ordinance for such purpose. That may be a nuisance which exists without authority of law, yet not a nuisance if so authorized."

■ We adopt the following language in the case of *Robinson Brick Co. v. Luthi,* 115 Colo. 106, 169 P. (2d) 171, 166 A. L. R. 655.

"Where the legislative arm of the government has declared by statute and zoning resolution what activities may or may not be conducted in a prescribed zone, it has in effect declared what is or is not a public nuisance. What might have been a proper field for judicial action prior to such legislation becomes improper when the law-making branch of government has entered the field."

We are therefore confronted with the problem of whether or not the operation of a trade school on the Webster site was, first, made lawful by the enactment of the zoning ordinance, and if not, second, whether or not such use was permitted by the positive action of the city plan commission.

■ Appellants contend that § 12 of the zoning ordinance is controlling. It provides:

"Any use not excluded from the Class V district which is a non-conforming use in any district in the city, may be extended by enlargement, reconstruction or alteration, upon any tract of land held under one ownership and partially occupied by said use at the time of passage of this ordinance, provided, however, that in the case of reconstruction the yard provisions of the district within which the use may be located shall be complied with."

Let us assume that, in 1946, approximately five hundred pupils of elementary school age were available in the area served by the Webster school; that the school board decided to remodel the old building by cutting off the top floor, with the result that only one hundred fifty pupils could be accommodated; and that, in order to accommodate the other three hundred fifty pupils, an addition or additions on that site would be made. That would be an extension by enlargement, reconstruction, or alteration on a tract of land held under one ownership and partially occupied by said use at the time of the passage of the ordinance.

When the Webster site was chosen by the voters of Spokane, it was chosen as a site for an elementary school. A building was constructed and maintained·as an elementary school. It was being so maintained at the time of the adoption of the zoning ordinance in 1929. The proposed enlargement or extension to the use as a trade school, with its shops, machinery, noise, and fumes, would be such an abrupt departure from its use as an elementary school that it could not be considered as an enlargement of a pre-existing use and could not be permitted under § 12.

■ Appellants contend that if they were not permitted to use this property for a trade school under § 12, the matter should be referred back to the plan commission for a hearing to determine whether or not they should be entitled to a special permit to conduct a trade school on the Webster site, under the provisions of § 4, subd. 4, of the zoning ordinance, which authorize a special permit after public hearing "upon due proof to the satisfaction of the Commission that such school will not be unduly detrimental to adjacent and surrounding property." They rely upon the well-established

rule that a court is not warranted—ordinarily—in substituting its own judgment for that of the zoning authorities primarily charged with the duty and responsibility of determining the question.

It must be remembered that these people protested first to the school board; then they asked for a hearing before the city plan commission; and then they appealed to the city council. Having exhausted all of the remedies afforded to them before every administrative agency, they finally applied for relief to the court. We do not feel that, on this showing, they should again be relegated to some administrative agency. The court is not usurping the functions of the plan commission. The commission was appealed to, and it refused to act.

■  The trial court found that the use of the Webster site was not authorized under § 12 or under any provision of the zoning ordinance. Since it was not a use authorized and existing under statute, and since the legislative and executive branch of the government had not declared that the proposed use could be conducted in that particular locality, as in the *Hughes* and *Linsler* cases, *supra,* there has been no declaration that such a use would not constitute a public nuisance. It was therefore proper for the judicial branch of the government to determine whether such use would, in fact, constitute a public nuisance.

■  Appellant argues that, because trade schools are authorized under Rem. Rev. Stat., § 4923 [P.P.C. § 912-5], the purposed use and operation of the Webster school site as a trade school cannot be deemed a nuisance because of Rem. Rev. Stat., § 9916. While it is true that trade schools are authorized under a state statute, the statute does not prescribe the place or manner of erection of such schools. The effect of § 4923 is to declare that the construction and maintenance of a trade school in a proper manner and place could not constitute a nuisance *in a legal sense. Jacobs v. Seattle,* 93 Wash. 171, 160 Pac. 299, L. R. A. 1917B, 329; *Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336, 203 Pac. 40; *Mola v. Metropolitan Park Dist. of Tacoma,* 181 Wash. 177, 42 P. (2d) 435. However, the erection and maintenance of a

trade school in an improper place or in an improper manner, not expressly authorized by law, could constitute a nuisance *in fact*.

■ Would the operation of a trade school on the Webster site constitute a public nuisance? For answer to this question, we must look to the statutes and to their interpretation in the cases. Nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others.

"A fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case." 46 C. J. 655, Nuisances, § 20.

In *Turtle v. Fitchett,* 156 Wash. 328, 287 Pac. 7, the maintenance of a public bathing resort and picnic grounds upon the shore of a small lake having no outlet, was enjoined. The lake had been accessible to, and completely surrounded by, property which would be depreciated in value to the extent of ten per cent, and any successful operation of the resort would attract such patronage as to be dangerous to the public health and liable to result in an epidemic of dangerous disease.

*Haan v. Heath,* 161 Wash. 128, 296 Pac. 816, held that an undertaking establishment, not a nuisance *per se,* becomes a nuisance in fact when located in an exclusive residential district, annoying residents and depriving them of repose and comfort by obnoxious odors, and noises day and night, and frequent funerals, entailing financial loss in depreciation of the value of their property.

In *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879, 31 L. R. A. (N.S.) 827, a tuberculosis sanitarium maintained in a residential section was enjoined as a nuisance, where the fear and dread of the disease was such that it depreciated the value of the adjacent property and interfered with the comfortable enjoyment thereof, disturbing the minds, nerves, and sleep of the occupants.

■

*Ferry v. Seattle,* 116 Wash. 648, 200 Pac. 336, 203 Pac. 40, was an action to enjoin as a nuisance the erection of a storage reservoir in Volunteer Park in Seattle. In affirming the granting of an injunction, and in overruling a Departmental opinion, this court sitting *En Banc,* said:

"In the present case, we find a very large section of the city of Seattle, composed of men and women who, in the ordinary business of life, are not to be charged as victims of hysteria, nor ready dupes of conjectural and imaginary fears, having a very real and present apprehension that their lives and properties will be jeopardized by the hanging of this modern sword of Damocles above their heads, and that fear is bolstered by the testimony of expert witnesses, and confirmed by the common sense of any one to whom the facts come. It does not take the testimony of experts, although that was produced, to advise one that the proposed structure would cause a most serious depreciation of property values within the affected area. It is an obstruction to the free use of property, as it interferes essentially with the comfortable enjoyment of life and property. It is a nuisance, for it annoys, injures and endangers the comfort, repose, health and safety of these respondents and renders them insecure in life and the use of their property. *The Department opinion refers to the reservoir as a necessity, and it may be so, but there is no contention made that the necessity exists to the point where it must be erected at this particular spot and no other.*" (Italics ours.)

*Park v. Stolzheise,* 24 Wn. (2d) 781, 167 P. (2d) 412, was an action to enjoin, as a public nuisance, the operation of a private sanitarium for the treatment and care of persons suffering from mental ailments, on a tract of land fronting on Puget Sound, about twelve miles south of Seattle. Extending along the water front for considerable distances in both directions were many fine residences, valued at sums between ten thousand and thirty thousand dollars. The area was peculiarly adapted for settlement and use by families having young children. In affirming the decree granting the injunction, we said:

"So, in this case, it can be truly said that, while a sanitarium for mental cases may be a lawful and necessary undertaking, its establishment in a community which has been settled and long used as a residential district, and which is

peculiarly adaptable for improvement with substantial homes and the rearing of children, would at once and continuously depreciate the values of such properties to a material extent; and, further, that the maintenance of such an institution in the midst of such a district, under a plan not only to house a great number of mental patients upon the particular premises but also to permit such patients to come and go as they pleased, would cause an immediate and profound alarm in the minds of the people in the neighborhood, would raise a fear for the safety of women and children, and would deprive the property owners of that repose and comfortable enjoyment of their homes to which they are entitled."

■ The testimony in the case at bar showed the following: depreciation in value (this was discounted somewhat by testimony that there was a general drop in values throughout the city, but there was sufficient testimony to warrant a finding that respondents' property had depreciated in value because of the intended use); unsightliness of temporary buildings; added noise and fumes incident to the operation of a trade school; danger from fire and explosion; traffic inconvenience and its incident hazard to young children. Any one of these things would not necessarily constitute a public nuisance which would warrant the enjoining of the maintenance and operation of the proposed trade school on the premises involved. But, considering all of these factors, we are of the opinion that the intended use of the property annoys, injures, and endangers the comfort, repose, health, and safety of the surrounding inhabitants, and should be enjoined. It must be remembered that this is an old established residential district, most of the families of which have children of tender years. As one lady witness so aptly stated, "It is a pretty strong family residential district."

Appellants have cited a number of cases from this court, holding, from the facts therein, that a public nuisance did not exist. Each case must be decided on its own peculiar facts. We are satisfied, from the evidence in this case, that the proposed operation of a trade school on the Webster school site would constitute a public nuisance in fact.

Having affirmed the trial court's decree that the proposed use would constitute a public nuisance, it is not necessary to consider the other assignments of error.

The trial court ordered that the temporary structures be removed from the premises and then stayed the operation of the injunction until June 30, 1949, evidently with the thought that the constitution might be amended by the people at the coming election, together with remedial legislation by the 1949 legislature. We do not feel that the temporary buildings, themselves, constitute a public nuisance. So much of the decree which holds the maintenance and operation of the proposed trade school on the Webster site to be a public nuisance, is affirmed. Such use is enjoined, the injunction to be effective upon the going down of the remittitur.

MILLARD, BEALS, STEINERT, SIMPSON, JEFFERS, and HILL, JJ., concur.

MALLERY, C. J., and ROBINSON, J., dissent.

