NO. 4-05-0764          Filed: 4/12/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THOMAS K. CAVANAGH, County Treasurer and Ex-Officio County Collector; THE SANGAMON COUNTY BOARD OF HEALTH; and SANGAMON COUNTY,     Plaintiffs-Appellees,     v. THE CITY OF SPRINGFIELD, ILLINOIS, a Municipal Corporation,     Defendant-Appellant. | ) Appeal from ) Circuit Court of ) Sangamon County ) No. 04MR175 ) ) ) Honorable ) Leo J. Zappa, Jr., ) Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

To fund its health department, Sangamon County levies a tax on all property in the county, including property in the City of Springfield. The city, however, has its own health department. On the authority of section 5-25011 of the Counties Code (55 ILCS 5/5-25011 (West 2004)), the city demanded from the county the entire amount of taxes the county had levied on property within the city for the support of the county health department. The county sought a declaratory judgment that section 5-25011 was inapplicable. The trial court agreed with the county and granted summary judgment in its favor. The city appeals.

According to section 5-25011, the county must pay the city "[t]he entire amount collected from taxes <u>levied</u> <u>under</u> <u>this</u> [d]ivision on property subject to the general corporate tax of [the] city." (Emphasis added.) 55 ILCS 5/5-25011 (West 2004). "[T]his [d]ivision" means division 5-25 of the Counties Code (55 ILCS 5/5-25001 through 5-25025 (West 2004)). For us to reverse the summary judgment, the city must

cite a section in division 5-25 that authorizes the county to levy its tax. The city has not done so. To our knowledge, only one statutory provision authorizes the tax, section 5-23002(b)(3) of the Counties Code (55 ILCS 5/5-23002(b)(3) (West 2004)); and it is located in division 5-23 (55 ILCS 5/5-23001 through 5-23043 (West 2004)), not division 5-25. Therefore we affirm the trial court's judgment.

## I. BACKGROUND

In 1915, when pulmonary tuberculosis was causing roughly one-seventh of all deaths in the United States (Everett v. Paschall, 61 Wash. 47, 48, 111 P. 879, 879 (1910)), the Illinois legislature passed "An Act to authorize county authorities to establish and maintain a county tuberculosis sanitarium, and branches, dispensaries[,] and other ancillary institutions connected with the same, and to levy and collect a tax to pay the cost of their establishment and maintenance" (Tuberculosis Act) (1915 Ill. Laws 346 (§1)). The provisions of the Tuberculosis Act, as amended and supplemented over the years, are now contained in division 5-23 of the Counties Code, entitled "Tuberculosis Sanitariums." At some point, the voters of Sangamon County passed a referendum authorizing an annual tax to fund a tuberculosis board of directors pursuant to the Tuberculosis Act.

On December 5, 1988, the Sangamon County board adopted a resolution abolishing the tuberculosis board and replacing it with a board of health. Sangamon County Resolution No. 11 (eff. December 5, 1988). Specifically, the resolution did three things. First, it created a county health department and ordered the appointment of a board of health, which was to "have the powers and duties" set forth in section 14 of "An Act in relation to the establishment and maintenance of county and multiple-county

- 2 -

public health departments" (County Health Department Act) (Ill. Rev. Stat. 1987, ch. 111 1/2, par. 20c13 (now 55 ILCS 5/5-25013 (West 2004))). The County Health Department Act is now division 5-25 of the Counties Code.

Second, the resolution abolished the county's tuberculosis board and transferred the employees, assets, records, and liabilities of the tuberculosis board to the newly created board of health.

Third, the resolution authorized an annual tax levy to fund the county health department and board of health, with the stipulation that the tax would be paid into the county treasury and held in the county health fund. As statutory authorities for this levy, the resolution cited section 1a of the Tuberculosis Act (Ill. Rev. Stat. 1987, ch. 34, par. 5101a (now 55 ILCS 5/5-23002 (West 2004))) and section 11 of the County Health Department Act (Ill. Rev. Stat. 1987, ch. 111 1/2, par. 20c10 (now 55 ILCS 5/5-25010 (West 2004))).

II. ANALYSIS

A. Tuberculosis Board

Under division 5-23 of the Counties Code, the county board must appoint a tuberculosis board of directors if the voters of the county approve, by referendum, either of three taxes: (1) a tax for a county tuberculosis sanitarium (55 ILCS 5/5-23007 (West 2004)), (2) a tax for the care and treatment of persons afflicted with tuberculosis (55 ILCS 5/5-23031 (West 2004)), or (3) an additional tax for the care and treatment of persons afflicted with tuberculosis (55 ILCS 5/5-23041 (West 2004)). The first type of

tax will go into the tuberculosis sanitarium fund (55 ILCS 5/5-23006 (West 2004)), to be used exclusively for the sanitarium (55 ILCS 5/5-23010 (West 2004)).  The other two types of tax will go into the tuberculosis care and treatment fund (55 ILCS 5/5-23030, 5-23040 (West 2004)), to be used exclusively for the care and treatment of persons afflicted with tuberculosis (55 ILCS 5/5-23030, 5-23036, 5-23040 (West 2004)).  The tax rate shall not exceed 0.075%.  55 ILCS 5/5-23001, 5-23006, 5-23029, 5-23030, 5-23039, 5-23040 (West 2004).

Until December 5, 1988, Sangamon County had a tuberculosis board--from which we infer that at some time in the past, voters in the county passed a referendum approving one of the three taxes listed above.  For purposes of the present case, it does not matter which of the three taxes they approved.  On December 5, 1988, the county board passed resolution No. 11, abolishing the tuberculosis board pursuant to section 1a of the Tuberculosis Act.  That section provided:

"After October 1, 1982, the county board of each county which has appointed a [tuberculosis] board pursuant to this Act may, by resolution[,] abolish such board[,] provided such resolution also provides that:

(a) in counties which have established a county or multiple-county health department in accordance with 'An Act in relation to the establishment and maintenance of county and multiple-county public health departments[]' [(County Health Department Act)], approved July 9, 1943, as amended[,] and have an existing [b]oard of [h]ealth:

- 4 -

(1) The membership of the [b]oard of [h]ealth in single counties be increased to 11 in counties where present membership is 8 and to 15 in counties where present membership is 12, a majority of which shall be members of the general public[;]

(2) The employees, records, assets[,] and liabilities of the board be transferred and assumed by the [b]oard of [h]ealth[;] and

(3) an additional tax be imposed by the county board at a rate, which shall not be increased at any time, which is equal to the greater of (A) the average tax rate imposed in the county pursuant to this Act over the most recent [five-]year period, or (B) the rate that would have been necessary to raise the average amount that has been spent annually for the most recent [five-]year period regardless of whether a tax was levied under this Act during such [five-]year period; or

(b) in counties which have not established a county or multiple-county health department in accordance with [the County Health Department Act] and do not have an existing [b]oard of [h]ealth:

(1) the establishment of a county or multiple-county health department and the appointment of a [b]oard of [h]ealth pursuant to [the County Health Department Act], and

(2) the employees, records, assets[,] and liabilities of the board be transferred and assumed by the newly created [b]oard of [h]ealth.

(3) A tax be imposed by the county board up to the maximum rate which had been authorized to be imposed by a referendum approved under this Act [(the Tuberculosis Act)]."  Ill. Rev. Stat. 1987, ch. 34, par. 5101a.

At the time the Sangamon County board adopted the resolution, the county had no health department or board of health; therefore, the resolution tracked the three subparagraphs of subsection (b) of section 1a, quoted above.

Without significant changes, section 1a of the Tuberculosis Act became section 5-23002 of division 5-23 of the Counties Code (55 ILCS 5/5-23002 (West 2004)).  For convenience, we refer to this statute as section 5-23002.

B. County Health Department

If a county has a tuberculosis board but no county health department, the Counties Code provides two ways of creating a health department.  The first way is in division 5-23, entitled "Tuberculosis Sanitariums":  abolish the tuberculosis board and replace it with a county health department governed by a board of health.  55 ILCS 5/5-23002(b)(1), (b)(2) (West 2004).  To fund its new health department, the county may continue to impose a tax "up to the maximum rate which had been authorized *** by a referendum approved under this [d]ivision," i.e., division 5-23.  55 ILCS 5/5-23002(b)(3) (West 2004).  The other way is in division 5-25, entitled "County and Multi-County Health Departments":  submit to the voters the proposition of whether the county shall

- 6 -

"levy an annual tax of not to exceed [0.1%] for the purpose of providing community health facilities and services."  55 ILCS 5/5-25003 (West 2004).  If the voters approve the tax, it will go, when collected, into the county health fund and "shall be used only for the purposes of this [d]ivision," i.e., division 5-25.  55 ILCS 5/5-25010 (West 2004).

### C. The City's Arguments

#### 1. "Division 5-23 Tax" versus "Division 5-25 Tax"

The city reasons that under statutory law, the county board could abolish the tuberculosis board only if it satisfied the conditions in section 5-23002(b):  basically, adopt a resolution establishing the county health department and board of health and levy a tax to support the health department.  In Resolution No. 11, the county satisfied those conditions.  According to the City, the tax for the support of the county health department is "not simply a continuation of the previously imposed [d]ivision 5-23 [t]uberculosis [t]ax" but, rather, a "new, separate tax."  The resolution "plainly states on its face that the [c]ounty's [h]ealth [t]ax shall be levied pursuant to [section 5-25010], a section in Division 5-25."  (Emphasis in original.)  The tax cannot be a "[d]ivision 5-23 tax"; the county transferred the employees, assets, records, and liabilities of the tuberculosis board to the board of health, and the tax now supports the board of health, a division 5-25 entity (55 ILCS 5/5-25012 (West 2004)).  Therefore, the city concludes, the tax is a "[d]ivision 5-25 tax."

The dispositive statutory provision, section 5-25011, reads as follows:

"The entire amount collected from taxes levied under

this [d]ivision [(division 5-25)] on property subject to the

general corporate tax of any city *** which maintains its own

- 7 -

local health department as provided in this [d]ivision, less the amount allowed for collecting the same, shall be paid over by the county treasurer to the treasurer of the *** city ***[,] to be used for the maintenance of its local health department." (Emphasis added.) 55 ILCS 5/5-25011 (West 2004).

We must strive to give effect to each word in the statute, because the words of a statutory text are usually the best guide to legislative intent. Zaabel v. Konetski, 209 Ill. 2d 127, 133, 807 N.E.2d 372, 375 (2004). Under the plain language of section 5-25011, the question is not whether the tax is a "division 5-23 tax" or a "division 5-25 tax"; the statute does not use those terms. The question is not whether the tax is "simply a continuation of the previously imposed [d]ivision 5-23 [t]uberculosis [t]ax." The question is not whether the tax maintains an entity described by division 5-25. Rather, the question is whether the tax was "levied under" division 5-25 (55 ILCS 5/5-25011 (West 2004)), that is to say, levied by the "authority," or at the "instruction," of division 5-25 (Merriam-Webster's Collegiate Dictionary 1283 (10th ed. 2000) (definition of "under")). It was not. Although division 5-25 describes, among other things, the county health department that the tax maintains and how that entity shall be governed, division 5-25 says nothing about the levying of the tax at issue in this case, a tax that originally maintained the tuberculosis board. Just because Resolution No. 11 cited section 5-25010 in addition to section 5-23002, it does not follow that statutory authority for the levy actually came from section 5-25010. Obviously, the resolution had no effect on the substantive content of the statutes. Section 5-23002(b)(3) alone empowered the county to levy this tax. 55 ILCS 5/5-23002(b)(3) (West 2004). Section 5-23002 is in division 5-

- 8 -

23 of the Counties Code, and, therefore, the tax is not "levied under [division 5-25]" within the meaning of section 5-25011.

## 2. Legislative History

Section 5-25010 (in division 5-25) provides, in part, as follows:

"The county board of any county which has established and is maintaining a county *** health department shall, when authorized as provided in [s]ection[] 5-25003 or 5-25004 [(55 ILCS 5/5-25003, 5-25004 (West 2004))], levy annually therefor, in excess of the statutory limit, a tax of not to exceed [0.1%] of the value plus the additional tax, if applicable, provided for in [s]ection 5-23002 [(55 ILCS 5/5-23002 (West 2004))], *** as equalized or assessed by the Department of Revenue, of all taxable property of the county ***."  (Emphasis added.)  55 ILCS 5/5-25010 (West 2004).

The city argues, by reference to legislative history, that the term "additional tax," in the statute quoted above, refers not to the tax in section 5-23002(b)(3), which Sangamon County is imposing, but to the "additional tax" in section 5-23002(a)(3), which a county that already had a health department would impose upon abolishing the tuberculosis board.  See 55 ILCS 5/5-23002(a)(3), (b)(3) (West 2004). We need not recount the legislative history.  Suffice it to say that if, as the city admits, section 5-25010 does not authorize the tax that Sangamon County levies for the support of its health department, we are aware of no other section in division 5-25 that does so.

- 9 -

In its reply brief, the city states: "[The county's] argument begins and ends with the same false premise that the [c]ounty's [h]ealth [t]ax is levied under the Tuberculosis Act set forth in [d]ivision 5-23." If the city considers that premise to be false, the city must demonstrate the falsity by citing a statutory provision other than in division 5-23 that authorizes the county to levy the particular tax at issue in this case. The city has not done so. The inescapable fact is that such authority comes from section 5-23002(b)(3) alone.

### 3. Statutory Scheme

The city argues that the statutory scheme is "to permit a county, whose voters previously approved a referendum authorizing a [d]ivision 5-23 tax to fund the operation and maintenance of its tuberculosis board, to impose a [d]ivision 5-25 tax to operate and maintain its newly established county health department without another referendum." (Emphasis added.)

Again, the city sets up a dichotomy between a "division 5-23 tax" and a "division 5-25 tax" (terms that section 5-25011 does not use), and that dichotomy leads the city astray. We recognize that the trial court used the same terms, but we find them to be unhelpful because they imply that divisions 5-23 and 5-25 exist in separate, airtight compartments. The tax at issue in this case is related to both divisions. The two divisions are connected to one another via section 5-23002(b), as a passageway connects two wings of a building. The tax originated in a referendum pursuant to division 5-23. The county continues to levy the tax pursuant to section 5-23002(b)(3) of division 5-23, "up to the maximum rate *** authorized *** by [the] referendum approved

- 10 -

under [division 5-23]" (55 ILCS 5/5-23002(b)(3) (West 2004)).  Instead of supporting a tuberculosis board, however, the tax now supports a county health department governed by division 5-25.  Instead of going into the tuberculosis sanitarium fund or the tuberculosis care and treatment fund, the tax now goes into the county health fund.  Rather than labor with a false dichotomy, one should ask the question posed by section 5-25011:  which division authorizes the levy of the tax?  The answer is not division 5-25.  Other than the "additional tax" in section 5-25010 (55 ILCS 5/5-25010 (West 2004)), which the city admits is irrelevant to this case, division 5-25 authorizes the levying of only one kind of tax:  a tax not to exceed 0.1%, approved by a new referendum.  55 ILCS 5/5-25003, 5-25004 (West 2004).

### 4. The Purpose of Section 5-25011

The trial court reasoned that its interpretation of section 5-25011 was "compatible with the legislative purpose of *** prohibit[ing] double taxation of property by different taxing bodies for similar purposes.  In this case, the City of Springfield is not subject to double taxation *** because it does not levy a tax for tuberculosis services."

The city disagrees with the trial court's reasoning for two reasons.  First, because the county is taxing property within the city for the support of the county health department rather than the tuberculosis board, the tax supports other health-related services besides the eradication of tuberculosis.  Second, the court's interpretation would have "peculiar consequences."  The city explains:

> "[I]f the legislative purpose of [s]ection 5-25011 is simply to
> prohibit double taxation by different taxing bodies for similar
> purposes[,] as the trial court concludes, the [c]ity would levy

- 11 -

any tax to fund services similar to those health-related services funded with the [c]ounty's [h]ealth [t]ax.  As long as the purpose of this [c]ity tax was to fund health-related services, the [c]ity's tax, no matter how small, would result in double taxation to Springfield residents.  Hence, the [c]ounty would be required to remit to the [c]ity <u>all</u> of the [c]ounty's [h]ealth [t]ax levied on Springfield residents even if the [c]ity levied only a penny tax.  Surely, such a peculiar result was not intended by the legislature."  (Emphasis in original.)

The city argues that instead of preventing double taxation, the actual purpose of section 5-25011 "is to ensure that the [c]ounty's [h]ealth [t]ax is properly used to fund the health department maintaining jurisdiction over the property over which the tax is levied."  According to the city,  we would fulfill that purpose by interpreting section 5-25011 to apply to the tax at issue in this case:  a tax that the county levies on property within the city pursuant to section 5-23002(b)(3).

We agree with the city's analysis of the legislative purpose.  The apparent purpose of section 5-25011 is to prevent landowners in a city from having to support two health departments, both the municipal health department as well as the county health department, which has no jurisdiction in the city (55 ILCS 5/5-25008(2) (West 2004)).  Because the county will pay the city "[t]he entire amount collected from taxes levied under [division 5-25] on property subject to the general corporate tax of [the] city" (55 ILCS 5/5-25011 (West 2004)), the city will, theoretically, use that payment to support the municipal health department instead of imposing a tax of its own--or, perhaps, if the

recoupment from the county is insufficient, the city will impose a lower tax than it would have otherwise imposed. If rural landowners in the county have to support only one health department (that of the county), urban landowners should have to support only one health department (that of the city). Also, if the county health department lacks jurisdiction within a city that has a health department of its own--and, therefore, the county health department provides no services within the city--fairness would seem to require that landowners in the city be exempt from supporting the county health department; otherwise, they would pay for a benefit they did not receive.

We disagree with the city, however, that the trial court's judgment in this case thwarts that purpose. Voters in Sangamon County authorized a tax under division 5-23 to support the struggle against tuberculosis. Resolution No. 11 had the effect of folding those tuberculosis-related services into a broader array of health services--with no change in the level of funding. The city admits in its brief that even though the county health department has no jurisdiction in the city, "the [c]ounty [h]ealth [d]epartment's provision of tuberculosis-related services to residents of Springfield would not be prohibited under [d]ivision 5-25." See 55 ILCS 5/5-25013(B)(1) (West 2004). While using the tax to fund the tuberculosis board, the county had no obligation to share it with the city. If section 5-25011 has the meaning the city attributes to it, one might wonder what incentive a county would have to abolish the tuberculosis board pursuant to section 5-23002(b). Why would a county choose to relinquish a substantial portion of its tax while simultaneously assuming the additional expense of providing a wider array of health services? Why would a county take on more responsibilities if its reward will be a cut in funding? As a practical matter, the legislature had to exempt a

- 13 -

tax pursuant to section 5-23002(b)(3) from the recoupment provision in section 5-25011, or else section 5-23002(b)(3) would not have been a viable alternative for the provision of services by the county.

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.